(583 P.2d 391)
No. 49,293

Joyce A. Moore, deceased, by and through WAYNE MOORE, Administrator of the Estate of Joyce A. Moore; and WAYNE MOORE and ANNA F. MOORE, heirs-at-law of the deceased, Joyce A. Moore, *Appellants,* v. W.D. FRANCISCO, M.D., *Appellee,* and DANUTA OKTAWIEC, M.D., *Appellee and Cross-Appellant.*

Opinion filed September 1, 1978.

*Charles D. Kugler* of DeCoursey & Kugler, of Kansas City, for the appellants.

*Donald A. Hardy* of Williamson, Cubbison, Hardy & Hunter, of Kansas City, for the appellee W.D. Francisco, M.D.

*Leonard O. Thomas* and *Monti L. Belot* of Weeks, Thomas, Lysaught, Bingham & Mustain, Chartered, of Kansas City, for the appellee and cross-appellant Danuta Oktawiec, M.D.

Before SWINEHART, P.J., SPENCER and MEYER, JJ.

SPENCER, J.: This is a medical malpractice case. Two doctors, a surgeon and an anesthesiologist, are defendants. At the close of plaintiffs' case, the court directed a verdict for the surgeon, W. D. Francisco, and entered judgment in his favor in conformity with K.S.A. 60-254(*b*). The case against Dr. Oktawiec continued and resulted in a mistrial when the jury was unable to agree. Plaintiffs have appealed from the judgment in favor of Dr. Francisco and, in addition, have raised and have argued certain trial matters. Dr. Oktawiec has filed notice of appeal (cross-appeal) seeking review by this court of certain pretrial and trial rulings.

Plaintiffs have specified four issues on appeal. Defendant Francisco has raised the question of jurisdiction as to plaintiffs' issues 1, 2 and 4, and as to all matters presented by cross-appellant for the reasons that all involve pretrial and trial rulings concerning only matters between plaintiffs and defendant Oktawiec; that none have any bearing on the judgment rendered per K.S.A. 60-254(*b*); and that none are final orders appealable as of right per K.S.A. 60-2102(*a*) or any other statutory provision by which this court might assume jurisdiction. We concur.

By reason of the foregoing, the sole issue properly before this court is whether the trial court erred in directing a verdict in favor of Dr. Francisco.

As shown by the pretrial order, plaintiffs contend that Joyce Moore died April 10, 1970, following surgery which took place on March 9, 1970; that defendants Francisco and Oktawiec were responsible for her death in that they failed to exercise and possess that degree of skill, care, and learning ordinarily exercised and possessed by anesthesiologists and orthopedic surgeons in failing to ascertain that the decedent had post-operative fever and/or jaundice after prior surgery in which halothane was used as the anesthetic; or, in the alternative, knowing of decedent's prior medical history, they failed to heed that warning and used halothane for decedent's last surgery despite the contra-indications for use of that anesthetic. It is contended that because of departure from the ordinary standard of care Joyce Moore died.

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict . . . . ."

*Frevele v. McAloon,* 222 Kan. 295, Syl. 5, 564 P.2d 508 (1977), *Ellis v. Sketers,* 1 Kan. App. 2d 323, Syl. 4, 564 P.2d 568 (1977), rev. denied, 221 Kan. 757 (1977).

As indicated, plaintiffs' claim was that both Dr. Francisco and Dr. Oktawiec were negligent in failing to ascertain Joyce's prior history of jaundice or hepatitis, or, knowing of it, in proceeding to administer halothane.

The reasoning of the trial court in granting the directed verdict for Dr. Francisco was that the evidence that he knew of Joyce's prior history of hepatitis was "quite thin." In addition, there was no expert medical testimony in his specialty that Francisco, as an orthopedic surgeon, was chargeable with knowledge that halothane was contra-indicated for persons with such history. Further, the court stated that, absent the testimony of an orthopedic surgeon to the effect that Dr. Francisco was medically negligent in the exercise of his specialty in failing to search out prior medical records as a part of the pre-operative history, there was no alternative but to sustain the motion for directed verdict.

At trial, plaintiffs called Dr. Vincent J. Collins as an expert witness. Dr. Collins is a specialist in anesthesiology and the director of the anesthesiology department of Cook County Hospital in Chicago, as well a member of the faculty of Northwestern University Medical School. After lengthy testimony to establish qualifications, with the trial court adhering to the local practice rule, Dr. Collins was allowed to testify as a specialist in anesthesiology. He indicated that halothane was contra-indicated for anyone who had hepatitis or other liver disease. Plaintiffs sought to ask Dr. Collins if it was a departure from a proper standard of care to fail to discover Joyce's prior history of hepatitis. The court ruled that the question was proper as to Dr. Oktawiec since she was an anesthesiologist and that was the witness' specialty, but that the witness had not been qualified as an orthopedic surgeon and, therefore, the question was not proper as to Dr. Francisco. The trial court stated:

". . . Mr. Kugler, you've established to my satisfaction, at least, if not defense counsel's, that your expert is cognizant and familiar with the standards of skill and care in the local medical community in his specialty, period.

. . .

"Now, you are going to have to find that he has some, whether or not he does, whether he has any specialized knowledge relating to the orthopedic specialty before I'm going to let him make any professional or state any professional opinions to this jury as to whether or not Francisco didn't follow accepted

practices in the community, those standards to which orthopedic specialists are held to."

Dr. Collins was permitted to testify that an orthopedic specialist is first of all a physician trained as a doctor regardless of specialties and sub-specialties; that there are certain aspects of the practice of medicine which are the same regardless of specialty and that one of those areas is the taking of the personal history of a patient, a procedure taught in medical school to all students; and that the taking of the personal history does not differ from specialty to specialty but is basic with every physician. When the court refused to allow Dr. Collins to testify as to Dr. Francisco's negligence, plaintiffs made a proffer of testimony with the jury excused:

"Q. Doctor, do you have a license to practice medicine?

"A. Yes, I do.

"Q. And what is that license in?

"A. The license is simply as it is in nearly every state, license to practice medicine and surgery.

"Q. And in the course of this practice, are there certain areas of the practice of that that are common to all areas of medicine?

"A. Yes.

"Q. And is one of these common areas the taking of the personal history?

"A. Yes.

"Q. And are you familiar with the standards of care in taking of a personal history in this community with regard to the field of medicine generally?

"A. They are the standard form and order that prevails in every accredited hospital in the United States.

"Q. And do you have an opinion as to whether that standard of care has been met by the personal physician who took the personal history from Joyce Moore in this case?

. . .

"A. There is in this hospital record a form entitled personal history and on the left margin it has seven items and in the written history as it is here and personal history there are some—there is lack of information that could have been obtained.

"Q. And what is the significance of that absence of information, Doctor?

"A. Well, with respect to item three, operations, C, there is a statement about tonsillectomy, congenital anomalies of the hand, three surgeries. There is no further information as to what happened.

"Q. And in your opinion is that a departure from the standard of care?

"A. I would say so, yes.

"Q. Are there any other departures from the standard of care apparent to you in that record by the surgeon, Doctor?

"A. Yes, I think that here on the next page—well, not on the next page, on the same page, in the system review there is no notation that this patient in the past

history, which is really what system review in part should review, and also past illnesses, there's no notation of the fact that the patient had had hepatitis at another hospital. The only thing that's down at the bottom of the page again is yellow jaundice, five years ago.

"Q. Is that entered in the appropriate place, that last comment, Doctor?

"A. It is on the page but it is after the physician's signature."

The record indicates that Dr. Francisco admitted placing the reference to "jaundice, five years ago" on the medical history only after the operation and the discovery of Joyce's difficulties.

If, as plaintiffs contend, the trial court erred in refusing to allow Dr. Collins to testify as to Dr. Francisco's negligence in taking the medical history, it would appear that the court also erred in directing the verdict for Dr. Francisco because expert medical testimony of such negligence was available and proffered.

The rules as to expert witnesses in medical malpractice cases were recently restated in *Webb v. Lungstrum,* 223 Kan. 487, 575 P.2d 22 (1978), as follows:

"A physician or surgeon is expected to have and exercise that reasonable degree of learning and skill ordinarily possessed by members of his profession and of his school of medicine in the community where he practices, or in similar communities." (Syl. 1.)

"In malpractice cases expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on the part of a physician or surgeon in his medical diagnosis, his performance of surgical procedures and his care and treatment of patients." (Syl. 2.)

In Annot., 85 A.L.R.2d 1022 (1962), § 4, p. 1026, the rule is stated:

". . . [A]n exception exists to the general rule that a physician of one school of medicine is incompetent to testify in a malpractice action against a physician of another school, where the method of treatment of the school of the defendant is the same as that of the witness."

In *Chandler v. Neosho Memorial Hospital,* 223 Kan. 1, 574 P.2d 136 (1977), the trial court excluded expert medical testimony on the ground that the experts (professors of pediatrics from California and Illinois) could not as a matter of law testify to the standards of care of premature infants in Chanute, Kansas. The experts had testified that such standards were nationwide and that they had familiarized themselves with the degree of learning and skill of general practitioners in Chanute, as well as the staff and equipment available there. The Supreme Court, in reversing the exclusion of the expert testimony, stated:

"The standard of medical and hospital care which is to be applied in each case

is not a rule of law, but a matter to be established by the testimony of competent medical experts. An expert may acquire knowledge of the applicable standard in the same manner that he acquires his other expert knowledge—through practical experience, formal training, reading, and study, or through a combination of those  .  .  .  .

"The witnesses here, well qualified medical experts, claimed knowledge of the applicable standards of care, and they gave a reasonable explanation as to how such knowledge was acquired. We recognize the rule that the determination of the qualifications of a witness to testify as an expert is a matter left to the sound discretion of the trial court, and that discretionary rulings are not reviewable in the absence of abuse of discretion or error of law. [Citation omitted.] Here, however, the trial court erred as a matter of law, and not as a matter of discretion, when the court ruled that the applicable standard could not be the same in Chanute as it is elsewhere in the United States. We conclude that the proffered expert testimony should have been received and admitted into evidence." (223 Kan. at 5.)

We can only conclude that the trial court failed to give adequate consideration to the allegations that Dr. Francisco was negligent in failing to properly take the prior medical history of his patient, and also that Dr. Collins, a well qualified medical expert in anesthesiology but also a licensed medical practitioner whose proffered testimony that the taking of the personal history was a matter common to all areas of medicine throughout the United States and who claimed knowledge of the applicable standards, was available to testify in that regard. We hold that the trial court erred as a matter of law in refusing to allow Dr. Collins to testify to a standard of care common to the medical profession of which he claimed knowledge and was reasonably able to explain how such knowledge was acquired.

The judgment entered in favor of the defendant W. D. Francisco is reversed and this cause is remanded for new trial.