No. 51,199

GUARANTEE ABSTRACT AND TITLE COMPANY, INC., *Appellee and Cross-Appellant*, v. INTERSTATE FIRE AND CASUALTY COMPANY, INC., *Appellant and Cross-Appellee.*

(618 P.2d 1195)

Opinion filed November 1, 1980.

*Reid F. Holbrook,* of Steineger and Holbrook, P.A. of Kansas City, and *Ronald D. Garrison,* of the same firm, argued the cause and were on the brief for the appellant/cross-appellee.

*George Maier, Jr.,* of Weeks, Thomas, Lysaught and Mustain, Chartered, of Kansas City, and *Edward H. Powers, Sr.,* of Kansas City, argued the cause and were on the brief for the appellee/cross-appellant.

The opinion of the court was delivered by

HERD, J.: This case arose out of *Ford v. Guarantee Abstract &*

*Title Co.,* 220 Kan. 244, 553 P.2d 254 (1976). Guarantee (appellee and cross-appellant) sued Interstate (appellant and cross-appellee) to recover the judgments and expenses assessed against it in *Ford.* Guarantee alleges the errors and omissions indorsement on Guarantee's liability insurance policy issued by Interstate covers punitive damages. Guarantee also alleges Interstate was guilty of bad faith and negligence in the defense of Guarantee in *Ford.* The trial court found for Guarantee on the first count and for Interstate on the second. Both parties appeal.

In *Ford,* Guarantee and its principal, Chicago Title Insurance Co., were found liable for the negligent and reckless acts of Carl Zimmerman, vice-president of Guarantee, for failing to obtain a deed in exchange for the payment of the purchase price and for failing to issue a title policy or return the purchase price as demanded by the Fords. The jury returned a verdict of $8,687.65 compensatory damages against each, Guarantee and Chicago, and punitive damages in the amount of $35,000 against Guarantee and $70,000 against Chicago. Guarantee and Chicago Title requested Interstate to appeal the decision, but Interstate refused to represent them. They obtained other counsel and appealed to this court. We affirmed the award of compensatory damages and reduced the punitive damages by one-half against both Guarantee and Chicago Title. The judgments were satisfied by the two parties and, on December 3, 1976, Chicago Title demanded indemnification of its judgment and expenses from Guarantee. Guarantee issued a promissory note to Chicago Title in the amount of $55,537.10 on December 24, 1976. No payments have been made on the note.

This action was filed December 17, 1976. Guarantee alleged that as agent for Chicago Title it was liable for both its own judgment and that of Chicago Title. It further alleged Interstate had issued a policy of insurance without being licensed to do business in Kansas and had paid only $5,236.86 on the judgments. Guarantee alleged in count one of the petition that Interstate was liable for all actual and punitive damages against Guarantee and Chicago Title under the terms of the insurance policy. Count two of the petition alleged Interstate was guilty of negligence and bad faith in its defense of Guarantee in the prior action and prayed Interstate be required to pay the entire judgment and for punitive damages in the amount in excess of

$10,000. The trial court removed the case from the jury's consideration and directed a verdict for Guarantee on count one and for Interstate on count two. This appeal followed.

The trial court found punitive damages had been awarded against Guarantee and Chicago Title in *Ford* based upon Zimmerman's reckless conduct and reasoned that conduct was covered under the policy. The trial court also found Zimmerman's actions were not committed maliciously, nor had the corporation ratified his acts, and the court stated a finding of malice or evidence of corporate ratification of Zimmerman's actions were the sole exceptions that would exclude coverage under the policy. Interstate maintains the trial court erred in construing the policy to provide coverage for punitive damages and cites as error the trial court's interpretation of the policy to cover reckless conduct and its failure to apply policy exclusions. More importantly, Interstate advances a lengthy argument detailing public policy considerations regarding insurance against punitive damages. Our discussion of this issue will center around public policy considerations.

The trial court predicted Kansas appellate courts would adopt an exception to the general view prohibiting coverage for punitive damages based upon public policy grounds. The exception was discussed as dicta in *Northwestern National Casualty Company v. McNulty,* 307 F.2d 432 (5th Cir. 1962). The court in that case noted where an insured becomes vicariously liable as a result of the actions of his servant, agent or employee, the insured is permitted to protect himself with insurance. The court reasoned "if the employer did not participate in the wrong the policy of preventing the wrongdoer from escaping the penalties for his wrong is inapplicable." *Northwestern* at 440. Inasmuch as the court found punitive damages were assessed against Guarantee as a result of the actions of its employee Zimmerman, the trial court applied the above stated exception and found punitive damages could be covered under the policy.

At the outset, we wish to point out the trial court erred in finding Guarantee's liability was incurred solely as a result of the actions of Carl Zimmerman. Guarantee's culpability was noted by this court in *Ford* at 265:

"In our opinion the evidence in this case warranted a substantial award of punitive damages. The evidence disclosed Chicago Title to have a net worth in

excess of $31 million, and Guarantee to have a net worth in excess of $336 thousand. The continued refusal of these substantial companies to issue a title policy or return the Fords' money, after admittedly disbursing the same in violation of their fiduciary instructions, and in violation of the cardinal rule of title practice, was, to say the least, such gross neglect of duty as to evince a reckless indifference of the rights of the Fords . . . ."

This is not, therefore, solely a case of vicarious liability. Consequently, the rule allowing insurance coverage for punitive damages in such cases is not applicable here. Nevertheless, we reject such a rule, regardless of whether liability is incurred vicariously or directly. It is against the public policy of this state to allow a wrongdoer to purchase insurance to cover punitive damages (*Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 507 P.2d 189 [1973]), and we interpret that rule to include any person who has incurred such liability regardless of whether the liability resulted from the insured's own acts or those of his employee, servant or agent.

In light of our rejection of coverage for punitive damages, we deem it unnecessary to address Interstate's arguments concerning the trial court's interpretation of specific policy language.

Interstate claims the trial court erred in finding the promissory note issued by Guarantee to Chicago Title to be enforceable. Interstate argues the note is "illusory" because Guarantee has made no payments on it and there is no evidence the note is an actual obligation. Interstate further argues if Guarantee recovers anything it should be allowed to recover only the punitive damages assessed against Guarantee, and not those damages assessed against Chicago Title and assumed by Guarantee. All parties are in agreement that Chicago Title, as principal, is entitled to indemnification from its wrongdoing agent, Guarantee. The primary question is whether a demand note executed by Guarantee to Chicago Title for the amount to be indemnified constitutes payment. Interstate relies on *Badger Lumber & Coal Co. v. Brown,* 124 Kan. 255, 258, 259 Pac. 786 (1927), where the court stated:

"[T]he giving of a note for an existing indebtedness is not a payment or discharge of the indebtedness unless it is made so by the agreement of the parties."

A careful review of the record reveals Guarantee and Chicago Title intended the note to discharge the debt. Interstate has produced no evidence to indicate otherwise; consequently, its argument cannot stand.

Appellant's remaining issues pertaining to the trial court's judgment in favor of Guarantee for costs and expenses of the appeal in *Ford* and for attorney fees in the case at bar will be discussed in our decision on Guarantee's cross-appeal.

Guarantee's cross-appeal questions whether the trial court erred in directing a verdict for Interstate on count two of the petition alleging Interstate was guilty of negligence and bad faith in its defense of Guarantee in *Ford*. Guarantee alleges Interstate failed to initiate settlement of the case, although it was aware of the hazards of the case. In particular, Guarantee cites as negligent conduct Interstate's knowledge that the lawsuit could have been initially settled by payment of the balance of the purchase price or conveyance of the property to the Fords. Guarantee alleges Interstate failed to act on that knowledge or to initiate a settlement for a period of two years. Additionally, Interstate failed to settle the case at the pretrial conference. Guarantee also argues Interstate did nothing to prevent the development of facts and circumstances upon which a judgment for punitive damages could be awarded against Guarantee, and Interstate's delay in resolving the law suit added to the amount of punitive damages ultimately awarded. Finally, Guarantee argues Interstate acted in bad faith in refusing to appeal the judgment in *Ford* on behalf of Guarantee.

We will first consider a liability insurer's duty to its insured in settlements and representation. In *Bollinger v. Nuss,* 202 Kan. 326, 333, 449 P.2d 502 (1969), this court stated:

"[A] liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise good faith in considering offers to compromise the claim for an amount within the policy limits. . . . Public policy dictates that the insured's interests be adequately protected, and we believe this may be best accomplished by holding that both due care and good faith are required of the insurer in reaching the decision not to settle."

The court in *Bollinger* stated that an insurer must give consideration to the interests of the insured equal to that consideration it gives its own interests. The good faith test requires that the insurer "view the situation as it would if there were no applicable policy limits." *Bollinger* at 338.

In *Coleman v. Holecek,* 542 F.2d 532 (10th Cir. 1976), the Tenth Circuit discussed the duty of an insurer to initiate settle-

ment negotiations absent an offer from the plaintiff. Holecek, who had an automobile policy with Allstate, was in an accident with Coleman. Coleman sued Holecek. Allstate appeared to assume control of the suit, but later withdrew, claiming Holecek had cancelled his policy and Allstate was not responsible for the suit. The trial court entered judgment against Holecek for both compensatory and punitive damages. Coleman sued Allstate in a garnishment proceeding alleging Allstate wrongfully and in bad faith refused to defend Holecek. The trial court held Allstate was grossly negligent and acted in bad faith and entered judgment against Allstate in the amount that had been entered against Holecek, although that amount exceeded policy limits. The court recognized that the Kansas appellate courts had not spoken directly to an insured's duty to explore the possibility of settlement but reasoned that *Bollinger* and *Rector v. Husted,* 214 Kan. 230, 519 P.2d 634 (1974), indicated the insured's situation must be given equal consideration. The court in *Coleman v. Holecek,* 542 F.2d at 537, stated:

"The duty to consider the interests of the insured arises not because there has been a settlement offer from the plaintiff but because there has been a claim for damages in excess of the policy limits. This claim creates a conflict of interest between the insured and the carrier which requires the carrier to give equal consideration to the interests of the insured. [Citation omitted.] This means that 'the claim should be evaluated by the insurer without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim.' [Citation omitted.] When the carrier's duty is measured against this standard, it becomes apparent that the duty to settle does not hinge on the existence of a settlement offer from the plaintiff. Rather, the duty to settle arises if the carrier would initiate settlement negotiations on its own behalf were its potential liability equal to that of its insured."

These cases indicate plaintiff Guarantee could have a good cause of action against Interstate in its tort action. It appears undisputed that Interstate never authorized its counsel Schmidt to initiate settlement negotiations and never attempted to approach the Fords on that subject. The remaining evidence on both sides is conflicting, with both sides accusing each other of crucial delays and unyielding stubbornness in settlement negotiation.

The issue of an insurer's duty to appeal is one of first impression in Kansas. The insurance policy in this case contained the standard "duty to defend" clause:

"[A]nd the Company shall have the right and duty to defend in his name and

behalf any sit against the Insured alleging damages, even if such suit is groundless, false or fraudulent . . . ."

It is generally accepted that this duty to defend clause does not necessarily obligate the insurer to prosecute an appeal. *Reichert v. Continental Insurance Company,* 290 So.2d 730 (La. App. 1974); *Fidelity General Insurance Co. v. Aetna Ins. Co.,* 27 App. Div. 2d 932, 278 N.Y.S.2d 787 (1967); *General Casualty Company of Wisconsin v. Whipple,* 328 F.2d 353 (7th Cir. 1964). See 44 Am. Jur. 2d, Insurance §§ 1536, 1537, p. 416-418. A case with facts similar to the instant case is *Hawkeye-Security Ins. Co. v. Indemnity Ins. Co.,* 260 F.2d 361 (10th Cir. 1958). In that case, the court considered whether Hawkeye was guilty of bad faith in refusing to appeal on behalf of its insured. Indemnity, the excess coverage carrier, appealed on behalf of the insured. Indemnity paid the judgment and sued Hawkeye, claiming Hawkeye breached its contract by refusing the advice of its counsel and not appealing. The trial court held Hawkeye was guilty of a breach of duty by refusing to take its counsel's advice. The Tenth Circuit held failure to follow the advice of counsel, alone, was not sufficient to show breach of duty but would be so if the insurer acted fraudulently or in bad faith. *Hawkeye-Security Ins. Co.* represents the majority view enunciated more recently by *Reichert v. Continental Insurance Co.,* 290 So.2d at 733:

"[T]he majority of jurisdictions hold that the obligation of an insurer to defend its insured is not absolute, and does not necessarily include the duty of prosecuting an appeal on the insured's behalf even though a judgment is rendered against the insured in excess of the insurer's policy limits. The test employed by the majority is one of good faith and fair dealing on the part of the insurer judged in the light of the rights of the insured as well as those of the insurer."

A minority of jurisdictions hold where there appear reasonable grounds for appeal, an insurer's obligation to defend extends to appeal a judgment adverse to the insured. See *Chrestman v. United States Fidelity & Guaranty Co.,* 511 F.2d 129 (5th Cir. 1975); *Ursprung v. Safeco Insurance Co.,* 497 S.W.2d 726 (Ky. 1973); *Home Insurance Co. v. Royal Indemnity Co.,* 68 Misc. 2d 737, 327 N.Y.S.2d 745 (1972); *Travelers Indemnity Company v. East,* 240 So. 2d 277 (Miss. 1970); *Fidelity Gen. Ins. Co. v. Aetna Ins. Co.,* 27 App. Div. 2d 932; *Kaste v. Hartford Accident & Indemnity Company,* 5 App. Div. 2d 203, 170 N.Y.S.2d 614 (1958); *Arenson v. National Auto. & Cas. Ins. Co.,* 48 Cal. 2d 528, 310 P.2d 961 (1957).

We think the majority view logical and just; although we have held Interstate is not liable for punitive damages under the policy, we do not look with favor upon an insurance company that abandons its insured and refuses to appeal, relying on its immunity from a claim for punitive damages. The trial court, although sustaining Interstate's motion for directed verdict as to count two, found Interstate should have appealed on behalf of Guarantee and awarded costs of the appeal to Guarantee. We affirm that finding with the additional order that the jury be allowed to determine damages on remand.

In considering Guarantee's cross-appeal from a directed verdict in favor of Interstate, we are bound by the following rule from *Frevele v. McAloon*, 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977):

"In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for a directed verdict."

See also *Apperson v. Security State Bank*, 215 Kan. 724, 732, 528 P.2d 1211 (1974), and *Moore v. Francisco*, 2 Kan. App. 2d 526, 583 P.2d 391 (1978).

Resolving facts and inferences drawn from the evidence in favor of Guarantee, we find certain questions in count two of Guarantee's petition must be submitted to the jury. Before closing, it is important to clarify the actual questions to be submitted for jury determination. As stated earlier, there are basically two issues in count two: failure of Interstate to settle the case and failure to prosecute an appeal on behalf of Guarantee. Although the trial court directed a verdict for Interstate, holding Interstate did not have a duty to settle, it later stated Interstate did have a duty to appeal the case and awarded Guarantee the costs of appeal. We are loath to disturb the trial court's finding regarding the duty to appeal. Therefore, pursuant to Guarantee's original petition, the questions for jury determination are whether Interstate had a duty to settle and, if so, the damages for such a breach of duty. Additionally, the jury must determine the damages for Interstate's failure to appeal the case on behalf of Guarantee.

Regarding the issue of attorney fees awarded to Guarantee pursuant to K.S.A. 40-256: the trial court made the award because

he warned both parties in his initial memorandum decision that he would rely on the *McNulty* exception and hold Interstate liable for the award of punitive damages. Therefore, he reasoned defendant's failure to settle the claim at that time was without just cause or excuse. We do not find that Interstate's failure to settle the claim at that time warrants the imposition of attorney fees. In January, 1978, the date of the initial memorandum decision, this court had not ruled on the *McNulty* exception. We find the question was an issue of first impression and the dispute was at that time a good faith controversy. See *Forrester v. State Farm Mutual Automobile Ins. Co.*, 213 Kan. 442, 452, 517 P.2d 173 (1973). This holding is confined only to the question of imposition of attorney fees and does not bear upon our later discussion of the duty to settle.

We reverse the judgment of the trial court on both counts and remand the case for a new trial on count two pursuant to the rulings herein set forth.

FROMME, J., not participating.