(769 P.2d 1194)
No. 62,116

Southern American Insurance, *Appellee*, v. Gabbert-Jones, Inc., *Appellant*.

Opinion filed March 10, 1989.

*Kenneth F. Beck*, of Wichita, for appellant.

*Stephen J. Jones*, of Hershberger, Patterson, Jones & Roth, of Wichita, for appellee.

Before Abbott, C.J., Rees and Rulon, JJ.

Rees, J.: This is a declaratory judgment action that raises the question whether under a certain excess liability insurance policy there is an enforceable obligation of the insurer to pay punitive damages awarded against the insured. Otherwise put, the question is whether the subject policy provides coverage to the insured for punitive damages awarded in a bodily injury negligence action.

It seems that on May 8, 1984, James Codner was in the employ of defendant Gabbert-Jones, Inc., (Gabbert) *a corporate entity*. He was a swamper, that is, a truck driver's assistant or an assistant truck driver, if there is a difference. While driving a Gabbert truck that day, Codner was involved in a multi-vehicle accident. Albert A. Jansen sustained bodily injury. We infer that he was the driver or an occupant of the other, or one of the other, vehicles. Jansen prosecuted a negligence action against Gabbert, Daniel Eakes, and Mid-Plains Construction, Inc. Nothing in the record before us indicates that Codner was a party defendant. We cannot tell or confidently infer what Eakes or Mid-Plains Construction, Inc., had to do with Jansen's claim.

Jansen's case was tried to a jury. Pursuant to K.S.A. 60-258a(b), the jury returned these special verdicts:

"1. Do you find any of the parties to be at fault?
    "Answer: Yes _X_ No ___
"2. [W]hat percentage of the total fault is attributable to each of the following persons?

| | |
|---|---|
| (A) Albert A. Jansen | 0% |
| (B) Gabbert-Jones, Inc. | 100% |
| (C) Mid-Plains Construction, Inc. | 0% |
| | 100% |

"3. . . . .
[W]hat total amount of damages do you find was sustained by the following party:
    (A) Albert A. Jansen                            $2,190,000.00
    "4. What amount of punitive damages, if any, do you award?
                                                    $ 700,000.00"

On those verdicts, the trial court entered "judgment against [Gabbert] in the amount of $2,190,000 actual damages and in the amount of $700,000 punitive damages for a total judgment in the amount of $2,890,000."

At the time of the accident, there was in full force and effect a "Commercial Umbrella Liability Insurance Policy," an excess policy, issued by plaintiff Southern American Insurance Company (Southern) to Gabbert effective July 1, 1983, for a one-year term. The operative language of the policy's insuring clause, or indemnity agreement, is this:

"[Southern] [a]grees . . . [t]o pay on behalf of [Gabbert] for ultimate net loss . . . which [Gabbert] may sustain by reason of liability imposed upon [Gabbert] by law . . . [f]or damages . . . because of [bodily injury] . . . caused by an [accident] . . . .

    . . . .
    " 'Ultimate net loss' means . . . *all sums* which [Gabbert] . . . is legally obligated to pay as damages . . . by reason of adjudication . . . ." (Emphasis added.)

We are not persuaded that the additional words "because of personal injury . . . liability to which this policy applies" appearing in the policy definition of "ultimate net loss" add anything now material.

The policy contains neither an express exclusion nor an express inclusion of punitive damages. None of the policy's express exclusions is presently pertinent.

By prosecution of this case, Southern has sought a judicial determination that under its policy it is not responsible for payment of the punitive damages part of the Jansen judgment

entered against Gabbert. The trial court held in favor of Southern and Gabbert appeals.

We digress to note that we have chosen to undertake review in this case despite deficiencies in the record, some of which violate established rules of appellate practice.

The briefs contain no citations to the record on appeal by volume and page. See Rule 6.02(d), (f) and Rule 6.03(c) (1988 Kan. Ct. R. Annot. 24-25). Other than the copy of the journal entry of judgment attached to the petition, the record on appeal includes nothing from the court file in the case of *Jansen v. Gabbert-Jones, Inc.*, Case No. 84 C 2069, in the Sedgwick County District Court. It contains none of the instructions given or requested in that case. Neither does it contain the frequently mentioned transcript of proceedings in that case. Assertions or argument of counsel before the trial court or in appellate briefs neither constitute evidence nor remedy inadequacy of the record on appeal. *City of Overland Park v. Barnett*, 10 Kan. App. 2d 586, 595, 705 P.2d 564 (1985); *Rural Water Dist. No. 6 v. Ziegler Corp.*, 9 Kan. App. 2d 305, 310, 677 P.2d 573, *rev. denied* 235 Kan. 1042 (1984). The parties' stipulations "effectively putting a number of items into evidence" in this case are not in the record on appeal. The trial court's memorandum decision, from which this appeal is taken, refers to a stipulation by the parties "concerning the pertinent facts," but no such stipulation is to be found in the record on appeal. Unfortunately, we do not share the trial court's and counsel's familiarity with the factual and procedural matters involved in *Jansen* and this case at the trial court level.

There are two principal issues involved in this case. The first is whether liability for payment of punitive damages is within the scope of the insuring agreement language. The second is whether public policy prevents liability for payment of the punitive damages by Southern.

As to the first question, Southern's position is that the insuring agreement language obligates it to pay only that part of Jansen's judgment attributable to compensatory, or actual, damages. It argues that because punitive damages are not compensatory in nature but rather their purpose is to punish and deter, then by operation of the words "[t]o pay . . . [f]or damages . . . because of [bodily injury]" it has no contractual obligation to pay punitive damages.

In contrast, Gabbert's position is that the insuring agreement here involved is in the nature of a so-called "all sums" obligation and, thus, Southern is obligated to pay for all damages (both compensatory damages and punitive damages) awarded against Gabbert arising out of an accident that causes bodily injury.

Kansas case law has said clearly that punitive damages are not compensatory in nature.

"[P]unitive damages 'are . . . allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs.' " *Sanders v. Park Towne, Ltd.*, 2 Kan. App. 2d 313, 318-19, 578 P.2d 1131, *rev. denied* 225 Kan. 845 (1978).

"[E]xemplary damages are not regarded as compensatory in any degree in [Kansas]." *Brewer v. Home-Stake Production Co.*, 200 Kan. 96, 100, 434 P.2d 828 (1967). See *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. 988, 989, 666 P.2d 711 (1983).

Further, it has been observed that:

"As . . . stated in Morris, *Punitive Damages in Tort Cases*, 44 Harv. L. Rev. 1173, 1200 (1931):
'The operation of the doctrine of punitive damages gives the plaintiff an undeserved windfall that has nothing to do with the reparative function, which is duly served (at least in theory) by the allowance of compensatory damages.' " 233 Kan. at 992.

Whether the scope of the language of an "all sums" policy obligation of the sort before us is sufficiently broad to include punitive damages is a subject addressed in numerous reported opinions. See *St. Paul Mercury Ins. Co. v. Duke University*, 670 F. Supp. 630, 633-34, 634 nn.8, 9 (M.D. N.C. 1987); *Dayton Hudson Corp. v. American Mut. Lia. Ins.*, 621 P.2d 1155, 1157-58, 1157 n.5 (Okla. 1980).

Examination of a large sample of those opinions leads us to conclude that, while there is a split of authority, the "majority rule" or predominant result is that punitive damages are within the scope of the language of an "all sums" obligation to pay assumed by the insurer. In arriving at our conclusion we have borne in mind that some cases involve underlying claims as to which punitive damages claims may be said to be "inherent." (For example, *Dayton Hudson* - false arrest; *Duke University* - malicious prosecution and libel and slander.) However that may be, it remains that actual damages and punitive damages

awarded in a negligence action have at least some connection. There cannot be a punitive damages award without an underlying or supporting compensatory damages award. "Before punitive damages may be awarded, a plaintiff must establish a right to recovery of actual damages." *Traylor v. Wachter*, 227 Kan. 221, 224, 607 P.2d 1094 (1980).

We find the "all sums" language in the policy before us to be unambiguous and unqualified. The policy does not say that all sums awarded as compensatory damages will be paid nor that all sums awarded except punitive damages will be paid. As we view it, upon issuance of the policy Southern bound itself to pay all sums Gabbert might be required to pay as damages, both compensatory and punitive, because of bodily injury caused by an accident. We find this is a matter of plain policy language.

Next we turn to the public policy question. In this regard, it may not be seriously disputed that various appellate opinions have set forth judicial pronouncement that as a matter of Kansas public policy liability for payment of punitive damages cannot be insured and that public policy renders unenforceable insuring agreements for payment of punitive damages. *American Surety Company of New York v. Gold*, 375 F.2d 523, 525-26 (10th Cir. 1966); *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. 532, 535, 618 P.2d 1195 (1980), *overruled on other grounds* 232 Kan. 76, 652 P.2d 665 (1982); *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 404, 507 P.2d 189 (1973).

The gist of the reasoning given for the existence of that public policy and its implementation is that a person should not be allowed to avoid the "price" of his or her wrongdoing by shifting away responsibility for payment of punitive damages. We pause to note that, with one significant exception, we are not now aware of Kansas appellate discussion on the question whether there is an exception to the public policy in those instances where the insured is personally "blameless" and its punitive damages liability exists solely by reason of some form of imputed or vicarious responsibility. The mentioned case law exception is *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. at 534-35, an opinion filed prior to the *Kline* opinion, and in which this is found:

"This is not, therefore, solely a case of vicarious liability. Consequently, the

rule allowing insurance coverage for punitive damages in such cases is not applicable here. Nevertheless, we reject such a rule, regardless of whether liability is incurred vicariously or directly. It is against the public policy of this state to allow a wrongdoer to purchase insurance to cover punitive damages (*Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 [1973]), and we interpret that rule to include any person who has incurred such liability regardless of whether the liability resulted from the insured's own acts or those of his employee, servant or agent." 228 Kan. at 535.

We directly dispose of one of Gabbert's contentions. K.S.A. 40-2,115 provides that:

"(a) It is not against the public policy of this state for a person or entity to obtain insurance covering liability for punitive or exemplary damages assessed against such insured as the result of acts or omissions, intentional or otherwise, of such insured's employees, agents or servants, or of any other person or entity for whose acts such insured shall be vicariously liable, without the actual prior knowledge of such insured.

"(b) The type of coverage specified in subsection (a) may be provided by insurance companies doing business in this state."

The effective date of this statute was April 26, 1984, a date that was some ten months after the policy was issued, within the policy period, and twelve days prior to the date of the accident involving Jansen and Codner.

Gabbert suggests that the statutorily stated "rejection" of Kansas public policy against insurability for punitive damages enures to Gabbert's benefit. We disagree. A single reason suffices to explain our conclusion.

" '[I]t is commonly said that . . . existing . . . settled law of the land at the time a contract is made [becomes] a part of it and must be read into it just as if an express provision to that effect were inserted therein . . . .' " *Steele v. Latimer*, 214 Kan. 329, 336, 521 P.2d 304 (1974).
"[C]ontracts are made subject to the laws which exist at the time the contract is made." *Edwards v. United States*, 215 F. Supp. 382, 385 (D. Kan. 1963) (noting *Rankin v. Ware*, 88 Kan. 23, 127 Pac. 531 [1912]).
"Laws in effect at the time of a transaction are a part of a contract . . . ." Securities Acceptance Corporation v. Perkins, *182 Kan. 169, 172, 318 P.2d 1058 (1957). See Schulte v. Franklin*, 6 Kan. App. 2d 651, 653, 633 P.2d 1151 (1981).
"If a contract is illegal . . . on the grounds of public policy, when made, it is not, according to the great weight of authority, rendered legal, or valid, . . . by a subsequent change in public . . . policy . . . ." 17 C.J.S., Contracts § 23, p. 627.

The scope and effect of Southern's policy must be measured by Kansas public policy as it existed when the insurance policy was issued. K.S.A. 40-2,115 neither directly nor indirectly infused

into Southern's policy new or other terms, provisions, or applicability.

On the record before us, it is impossible to determine the ground or grounds for the punitive damages award against Gabbert. Even so, because Gabbert has taken no direct appeal in *Jansen*, we must deem that Gabbert has conceded that the punitive damages award here was entered within the operation of the following "complicity rule" pronounced in *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. at 994:

"A *corporation* is not liable for punitive damages for an employee's tortious acts committed within the scope of his employment unless (a) the corporation or its managerial agent authorized the doing and manner of the act; (b) the employee was unfit and the corporation or its managerial agent was reckless in employing or retaining him; (c) the employee was employed in a managerial capacity and was acting in the scope of employment; or (d) the corporation or its managerial agent ratified or approved the act of the employee." (Emphasis added.)

In our view it now ill behooves Gabbert to suggest there is the possibility that punitive damages liability has been imposed upon it by operation of the doctrine of respondeat superior or some other doctrine or principle calling for imposition of imputed liability upon a corporate principal, master, or employer arising out of the acts of its agent, servant, or employee. *Kline* squarely rejects such "vicarious liability." See *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. at 535.

*Kline* teaches that imposition of punitive damages liability under the complicity rule necessitates some blameworthiness on the part of the "principal"—the principal is not an innocent free of blame. That being so, no presently useful purpose is to be served by study of the growing number of decisions discussing and frequently approving the insurability of punitive damages liability vicariously imposed upon an innocent principal. See *Dayton Hudson Corp. v. American Mut. Lia. Ins.*, 621 P.2d at 1160, and 1160 n.18, where it is said, "In almost all jurisdictions which disallow insurance coverage for punitive damages, an exception is recognized for those torts in which liability is vicariously imposed on the employer for a wrong of his servant." See also *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432, 439 (5th Cir. 1962) (a case quoted with approval in *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. at 405), where it is observed that, in that group of cases where punitive damages liability is vicariously allowed against the employer for injury

caused by an employee, the employer is usually permitted to protect himself by insurance. But, again see *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. at 535.

It is possible that the punitive damages award here was granted upon a finding of direct liability of Gabbert on the ground that it recklessly hired or retained an incompetent employee. See *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 590-91, 682 P.2d 653 (1984). Because of the deficient state of the record on appeal, in particular the nonavailability of the jury instructions in *Jansen*, we decline to engage in a discussion premised on that possibility. It is sufficient to say that we find precious little in Gabbert's argument to us that would support reversal here if punitive damages were awarded on a theory of direct liability owed by Gabbert. To repeat, no appeal was taken in *Jansen*; reckless hiring or retention of an incompetent employee is within the complicity rule.

The burden is always on the appellant to make it affirmatively appear that the trial court erred in the ruling challenged on appeal. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 602, 647 P.2d 1268 (1982); *Duffin v. Patrick* 216 Kan. 81, 83, 530 P.2d 1230 (1975); *Culp v. Bloss*, 203 Kan. 714, 719, 457 P.2d 154 (1969). On this appeal, we conclude that Gabbert has not made that affirmative showing; it has not persuaded us that, as a matter of law, the trial court's decision in favor of Southern was erroneous.

Affirmed.