**Affirmed and Opinion filed May 2, 2019.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-17-00643-CR

_____

**OMAR HERNANDEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1519114**

## O P I N I O N

Appellant Omar Hernandez appeals his conviction for tampering with a governmental record, raising challenges to the sufficiency of the evidence and the trial court's admission of extraneous bad-acts evidence. We conclude (1) a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt based on the trial evidence and (2) any error in admitting the challenged evidence was harmless. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A motorist reported to police that she had been hit by another vehicle whose driver had abandoned the scene of the accident. The motorist had followed the fleeing vehicle in an effort to get a license plate number. After getting the plate number, the motorist called law enforcement.

Appellant, a police officer, responded to the call along with Officer Viet Tran. When the officers arrived, they took the motorist's statement. At trial, the motorist testified that the police officer called her back after investigating the license-plate number and told her that the owner had not been driving the vehicle and that the police would continue investigating. The motorist heard nothing further from the police.

Officer Tran testified that on the date of the incident he and appellant did not conduct an investigation at the address matched to the license-plate number. After speaking with the motorist, the officers returned to the police station. Before Officer Tran left work for the day, appellant told him that he would finish the report. A printout of the offense report, admitted into evidence at trial, indicates that appellant created the report for the motorist's complaint (the "Offense Report") on the constable's computer and that appellant entered statements on the report about the investigation. That information then became available to others at the precinct, including the officer who would approve the report.

Internal affairs officers investigated the veracity of statements in the Offense Report and other evidence of appellant's on-duty whereabouts. They referred the matter to the district attorney's office. The State elected to prosecute appellant for tampering with a governmental record.

The superseding indictment on which the case went to trial stated in relevant part:

OMAR HERNANDEZ, hereafter styled the Defendant, heretofore on or about MAY 4, 2015, did then and there unlawfully, knowingly make a false ENTRY IN a governmental record, namely, HARRIS COUNTY CONSTABLE OFFICE PRECINCT 6 OFFENSE REPORT NUMBER 15-67660, attached hereto as exhibit A. BY STATING THAT ON MAY 4, 2015 HE CONDUCTED AN INVESTIGATION AT 4855 W. FUQUA, APT. 2204 AND THE ACTIONS OF THE DEFENDANT WERE DONE WITH THE INTENT TO DEFRAUD AND HARM ANOTHER.

Exhibit A to the indictment — a printed copy of a four-page document entitled "Incident Report Precinct 6, Hiliodoro Martinez" — contained the offense number "15 – 67660." The document contains various boxes with descriptive field identifiers. The boxes include the following entries:

| Field | Entry |
|---|---|
| Supplement No. | "Orig." |
| Report Date | "05/04/2015" |
| Reported Time | "18:22" |
| From Date | "05/04/2015" |
| From Time | "18:22" |
| To Date | "05/04/2015" |
| To Time | "19:00" |
| Operator | "C60357/Hernandez, Oma" |
| Entered By | "C60357" |
| Report Officer | "C60357/Hernandez, Oma" |
| 2nd Operator | "Tran, Viet" |
| Approving Officer | "C60284" |
| Approval Date | "05/10/2015" |
| Printed at | "06/05/2015  14:09" |

The third paragraph under the section entitled "Deputies Action" of the incident report 15-67660 states:

3

Once deputies received an address, deputies then relocated to the license plate address. Once deputies arrived at the location of 4855 W. Fuqua, deputies did not observe a possible vehicle that fit the description of the FSGI. Deputies attempted to make contact on Apt. 2204 at the location, after several attempts were made by knocking on the front door, deputies were unable to make contact.

In his interview with an internal affairs investigator, appellant admitted that he and Officer Tran had not visited the license-plate number address on May 4, 2015, as the Offense Report states.

The jury found appellant guilty as charged. The trial court assessed punishment at two years' confinement, suspended the sentence, and placed appellant on community supervision for two years.

## II. ISSUES AND ANALYSIS

On appeal, appellant raises three issues challenging his conviction.

### A. Legal Sufficiency of the Evidence

In his first issue, appellant complains that the evidence is legally insufficient to support the jury's finding that the Offense Report in which he allegedly made a false entry did not amount to a "governmental record" at the time appellant made the entries. In evaluating a challenge to the sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). We may not overturn the verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge

of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). We measure sufficiency to support a conviction by comparing the evidence presented at trial to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Hernandez v. State*, 556 S.W.3d 308, 312 (Tex. Crim. App. 2017) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A hypothetically correct jury charge "is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits the offense of tampering with a governmental record if the person knowingly makes a false entry in, or false alteration of, a governmental record. Tex. Pen. Code Ann. §37.10(a)(1) (West, Westlaw through 2017 1st C.S.). Under the Penal Code, the term "governmental record" means . . . anything belonging to, received by, or kept by government for information, including a court record." Tex. Pen. Code Ann. §37.01(2)(A) (West, Westlaw through 2017 1st C.S.). With exceptions not applicable to this case, the offense of tampering with a governmental record is a state jail felony if "the actor's intent is to defraud or harm another." Tex. Pen. Code Ann. §37.10(c)(1).

In a hypothetically-correct charge the trial court would instruct the jury to

5

find the defendant guilty of tampering with a governmental record only if the jury, considering the evidence, finds beyond a reasonable doubt that on or about May 4, 2015, in Harris County, Texas, appellant knowingly made a false entry in a governmental record with intent to defraud or harm another. And, in the hypothetically correct charge, the trial court would instruct the jury on the statutory definition of "governmental record."

### *1. Made an entry in a "governmental record"*

To determine whether the Offense Report, a document in electronic form on the criminal justice database, falls within the statutory definition of "governmental record," we look to the text of the statute: "anything belonging to, received by, or kept by government for information, including a court record." Tex. Penal Code Ann. § 37.01(2)(A). The statute contains broad terms. That suggests the statute casts a wide net. Our task is to determine if the Offense Report falls within the scope of "governmental record."

If a statute's language is unambiguous, we are to interpret the statute in accordance with the plain meaning of the language, unless doing so would lead to absurd results that the Legislature could not possibly have intended. *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999); *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018). In determining plain meaning, we must read words and phrases in context and construe them according to the rules of grammar and usage. *Sanchez v. State*, 995 S.W.2d at 683. We presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if it is reasonably possible to do so. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017).

The plain, unambiguous text of section 37.01(2)(A) includes "anything belonging to, received by, or kept by government for information." The

6

Thirteenth Court of Appeals has found that documents created by a government officer may exist at the time they are created as governmental records immediately susceptible to a false entry. *Lewis v. State*, 773 S.W.2d 689, 692 (Tex. App.—Corpus Christi 1989, pet. ref'd) (stating that "[a]ppellant's act of making the entire warrant a government record constituted an act of making the false portion of the warrant a false entry in a government record. Appellant's actions constituted a single, simultaneous transaction wherein he both created a government record and inserted a false entry in the record. . ."); *see also Chambers v. State*, 523 S.W.3d 681, 686 (Tex. App.—Corpus Christi 2017, pet. granted) (finding that firearms qualification forms kept by police department were governmental records at the time false information was entered on them).

Appellant asks us to construe "governmental record" to exclude the Offense Report, a draft document in electronic form on the criminal justice system database. Appellant points to the absence of evidence showing that the record had been filed or "received by" the government. He relies heavily on a line of cases holding that private individuals making false statements on documents later submitted or filed with a state governmental unit did not violate section 37.10(a)(1) (for making a false entry or alteration of a governmental record) because at the time the false entry was made the government had not yet received the document. *See State v. Vasilas*, 187 S.W.3d 486, 491 (Tex. Crim. App. 2006) (finding that a petition for expunction was not a governmental record when the defendant prepared it, but that for purposes of section 37.10(a)(5) it became one once the court received it and he used it in seeking to obtain the expunction); *Constructors Unlimited, Inc., v. State,* 717 S.W.2d 169, 174 (Tex. App.—Houston [1st Dist.] [1st Dist.] 1986, no pet.)(holding that pleading containing false statements did not become a government record until it was filed); *Pokladnik v. State,* 876 S.W.2d

7

525, 527 (Tex. App.—Dallas 1984, no pet.) (holding false statement on affidavit for foreclosure under statutory storage mechanics lien submitted on State Department of Highways and Public Transportation form was not a governmental record until filed with the Department of Public Safety). These cases involve entries made by non-governmental actors on documents not owned by or in the custody of a governmental agency. The courts deciding them all relied on the "received by" component of the definition. These cases have no application to today's case, which involves something generated by a government employee on government property as part of the actor's regular governmental duties.

"Government" includes the Harris County Constable's Office. Tex. Penal Code Ann. § 1.07(24). The only authority appellant cites that arguably might support the proposition that the Offense Report is not a governmental record is a civil Whistleblower case. In that case, *Connally v. Dallas Indep. Sch. Dist.,* 506 S.W.3d 767, 786 (Tex. App.—El Paso 2016, no pet.), the Eighth Court of Appeals evaluated whether the civil plaintiff, a school district employee, had made a good faith report of a criminal wrongdoing that led to the employee's termination. The *Connally* court appears to have analyzed the issue under the "received by" clause of the statutory definition. *Id*. The *Connally* court suggested that the University Interscholastic League (UIL) forms were not governmental records at the time the employee entered false information on them because they had not yet been filed with the school district, a statement that amounts to an obiter dictum — not essential to the court's holding and not binding even in that court, because the court found that the reported conduct showed a criminal offense under section 37.10(a)(5). *See id*. ("[W]e agree with Connally that merely because the residency forms had not yet been filed with the district before they were allegedly falsified or altered by DISD [school district] personnel does not prevent them from being

8

considered governmental records under subsections (a)(5).")

The copy of the Offense Report provides some evidence upon which the jury reasonably could have relied to discern identifying information showing that appellant created the report on the Constable's criminal justice database from which the printout came. Officer Tran testified that appellant told him he intended to write the Offense Report on the day the report was made. According to Officer Tran, the Offense Report bore the indicia that appellant had written the report on the precinct's computer system, property which the jury reasonably could have inferred belonged to and was kept by appellant's government employer for information.

We conclude that the trial evidence would allow a rational trier of fact to find beyond a reasonable doubt that the Offense Report was a governmental record when appellant made the false entry in it. *See Chambers*, 523 S.W.3d at 686. Moreover, even under the "received by" line of authority upon which appellant relies, the result would be the same because the evidence shows that appellant, a government official, made the questioned entry on an electronic record after generating a case number for that electronic record on his government employer's criminal justice database and that he did so in the course of his regular duties. *See Lewis*, 773 S.W.2d at 692.

### 2. Knowingly made a false entry

The third paragraph of the Offense Report, under the section entitled "Deputies Action" quoted above, recites what the deputies did upon arrival at the license-plate address. In appellant's videotaped interview with an internal-affairs investigator, consistent with Officer Tran's testimony, appellant admitted that these actions did not occur. Additionally, Officer Tran testified that he rode with appellant at the time of the service call and returned to the station with appellant

9

after the call. According to Officer Tran, he and appellant did not follow up by visiting the address that matched the license plate number that day. The trial evidence would allow a rational trier of fact to find beyond a reasonable doubt that appellant knowingly made a false entry in the Offense Report.

### 3. *Intent to defraud or harm another*

The evidence of intent to defraud or harm another is not disputed on appeal. To establish intent to defraud, the State presented evidence of other dates on which appellant was at home or not performing his job duties even though he was on duty, thereby defrauding his employer. The jury also could have discerned this intent from the Offense Report printout, which indicates that appellant submitted the report in a way that made it available, at a minimum, for the immediate use and review of the approving officer, whose badge number is noted on the printout and who approved the report several days after appellant's entry.

We conclude that the trial evidence would allow a rational trier of fact to find the essential elements of the charged offense beyond a reasonable doubt. Accordingly, we overrule appellant's first issue.

## B. Notice of Extraneous Bad Acts

In his second issue, appellant complains that the trial court erred in allowing the State to introduce evidence of appellant's on-duty whereabouts on another date without first giving proper notice. Specifically, appellant complains that the trial court should not have let the State introduce evidence of appellant lying about being on duty on May 17, 2015, because the State failed to give notice of its intent to introduce evidence of that act.

Under Texas Rule of Evidence 404(b)(2), "[o]n timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before

trial that the prosecution intends to introduce such evidence--other than that arising in the same transaction--in its case-in-chief." Tex. R. Evid. 404(b)(2). Presuming, without deciding, that the trial court erred in admitting the challenged evidence of an extraneous bad act in violation of Rule 404(b), we consider whether appellant suffered harm by the failure to provide reasonable notice.

At trial, the State introduced extraneous evidence to show appellant was somewhere other than where he reported to be on May 17, 2015. The evidence included testimony of the internal affairs officer describing surveillance of appellant via tracking the location of appellant's patrol vehicle. When the internal affairs officer found that appellant's patrol car was parked at appellant's residence, the internal affairs officer coordinated with dispatch to contact appellant and request his location. The internal affairs officer testified that appellant stated that he was on duty at one of the housing projects appellant was assigned to patrol. The internal affairs officer's testimony was supported by reference to an exhibit showing appellant's GPS-tracking location for that date.

Over a year before trial the State filed a notice of its intention to use evidence of appellant's whereabouts during the nights of the Houston Rockets basketball team playoff games during the 2015 playoff season, and, in fact, the Rockets were in a playoff game on May 17, 2015 (the "May 17 Incident"). But, the State's notice also specified the evidence would show that on the nights appellant was visiting a hotel near downtown Houston to watch the games on television, not that appellant was at his home.

The trial court held a hearing on appellant's motion in limine in which appellant sought to exclude of the May 17 Incident. The State raised the issue of presenting GPS data for May 17, 2015, and other dates for the purpose of showing appellant's intent to defraud. Appellant's trial counsel acknowledged the evidence

but argued for its exclusion on the basis that it was not relevant under Rule 404(b) for that purpose.

The State represented to the trial court that it had tendered the GPS records for the May 17 Incident and for other incidents on other dates. Appellant's trial counsel did not dispute that the defense had actual knowledge of the allegation pertaining to the May 17 Incident raised under Rule 404(b) and instead focused on objections to the rule's substantive requirements. *See Hayden v. State*, 66 S.W.3d 269, 273 (Tex. Crim. App. 2001). Appellant's trial counsel did not request a continuance on the basis of the extraneous bad-act evidence nor did appellant show how the allegedly deficient notice lacked the requisite information to allow appellant to mount an effective defense. *See Pena v. State*, 554 S.W.3d 242, 250 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). We overrule appellant's second issue.

## C. Alleged Misstatements by the State in Arguing Evidentiary Points

Appellant asserts in his third issue that the State improperly urged the trial court to admit the challenged evidence of an extraneous bad act despite the lack of notice by arguing that any error would be deemed harmless on appeal. He presents the question: "what appellate relief should be granted to a losing defendant when the State affirmatively misstated case law to the trial court and essentially told the court that any error would be found harmless?"

The State raised several arguments in the trial court in response to appellant's contention that the State had violated Rule 404(b)'s notice requirement. In the course of referring the trial court to cases on the subject, the State pointed to a passage from *Hernandez v. State*, 176 S.W.3d 821 (Tex. Crim. App. 2005), and paraphrased the factors courts consider in a harm analysis. But, appellant does not cite to any place in the record (and we have found none) where the prosecutor

asked the trial court to admit the extraneous bad-act evidence despite the lack of notice on the basis that any error in doing so would be held harmless. We overrule appellant's third issue.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan.

Publish — TEX. R. APP. P. 47.2(b).