(995 P.2d 890)

No. 81,037

STATE FARM FIRE AND CASUALTY COMPANY, *Appellee,* v. DANIEL
A. MARTINEZ d/b/a INSURANCE CLAIMS CONSULTANT,
*Appellant.*

Opinion filed January 14, 2000.

*Daniel Martinez,* appellant pro se.

*J. Philip Davidson* and *Christopher M. Braun,* of Wallace, Saunders, Austin, Brown & Enochs, Chtd., of Wichita, for appellee.

Before LEWIS, P.J., BUCHELE, S.J., and CHARLES E. WORDEN, District Judge, assigned.

WORDEN, J.: Appellant Daniel A. Martinez, d/b/a Insurance Claims Consultants, appeals the trial court's order granting summary judgment in favor of appellee State Farm Fire and Casualty Company (State Farm). We affirm.

Martinez operated a business under the name of Insurance Claims Consultants in Wichita and purchased a business insurance policy from State Farm. In early 1997, the attorney general commenced an action against Martinez, alleging he had engaged in the unauthorized practice of law and had engaged in deceptive and unconscionable acts and practices in violation of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*

State Farm retained legal services for Martinez in connection with the suit against him, reserving the right to assert that it might not be liable to indemnify him under the policy. Ultimately, in August 1997, State Farm instituted this declaratory judgment action to determine whether it had liability coverage under the policy.

In the action prosecuted by the attorney general, a jury convicted Martinez of three violations of the deceptive acts and practices provisions of the KCPA, including a single violation under K.S.A.

50-626(b)(4) that he "disparaged the services of another by representing that [Wichita] attorneys would charge a fee of 25-40% on a workers' compensation award."

In March 1998, the trial court granted State Farm's motion for summary judgment, finding no ambiguity in the policy or liability on the part of State Farm to indemnify Martinez. This appeal timely followed.

Martinez argues that the trial court erred in granting State Farm's motion for summary judgment.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. See *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

Martinez argues that the business insurance contract with State Farm is ambiguous regarding coverage; thus, there exists a dispute of material fact precluding summary judgment.

The risk insured against and the duty to defend under a policy of liability insurance are determined initially by the terms of the policy. The overriding question in this appeal is the obligation of State Farm under the policy and the risk insured against with respect to the attorney general's suit. In determining the appropriateness of the trial court's actions, the pleadings and findings in the attorney general's action must be examined in the light of the terms of the policy.

## ATTORNEY GENERAL'S SUIT

The petition filed by the attorney general asserted two theories

against Martinez: (1) that he had engaged in the unauthorized practice of law and (2) that he had engaged in "deceptive and unconscionable acts and practices" in violation of the KCPA, pursuant to the provision of K.S.A. 50-626 and K.S.A. 50-627. Ultimately, Martinez was found guilty of the following: two violations of K.S.A. 50-626(b)(2), *willful* representation that he had advanced legal knowledge and experience in the insurance claims process and that those representations contained exaggerations, falsehoods, innuendos, and ambiguities of material facts; one violation of K.S.A. 50-626(b)(4), where Martinez disparaged the services of another by representing that attorneys would charge a fee of 25-40% of a workers compensation award and that he made such representation *knowingly, or with reason to know,* that they were false or misleading representations of material facts; committing 201 unconscionable acts and practices in violation of K.S.A. 50-627, by making misleading statements of opinion on which the consumer was likely to rely to the consumer's determent; and engaging in the unauthorized practice of law.

The court fined Martinez $500 for each of the 201 unconscionable acts, $5,000 for each of the 2 willful misrepresentations, and $5,000 for disparaging the services of another. These fines were civil penalties imposed pursuant to K.S.A. 50-636(a).

## THE POLICY

The policy is labeled and described as a "Business Policy" of insurance. This is a type of liability policy designed specifically for the protection of those engaged in business.

"A contract is the written embodiment of the parties' intent, and construction of the contract is a matter of law." *Decatur County Feed Yard, Inc. v. Fahey,* 266 Kan. 999, 1007, 974 P.2d 569 (1999). Appellate courts construe insurance policies in a way that will give effect to the intentions of the parties. *Brumley v. Lee,* 265 Kan. 810, 812, 963 P.2d 1224 (1998). If the policy is not ambiguous, the court is not to remake the contract, the court is to enforce the contract as made. 265 Kan. at 812-13.

"To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation

of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992).

Martinez repeatedly cites his interpretation that the policy says that State Farm will defend him and indemnify any damages that he is obligated to pay as evidence of ambiguity. Differing interpretations of a contract's provisions do not make a contract incomplete or ambiguous. See *Fahey*, 266 Kan. at 1007.

The provision central to this appeal provides: "We [State Farm] will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies." The policy then defines bodily injury, property damage, personal injury, advertising injury, and excepts certain willful actions of the insured from coverage.

This court must first look at the underlying theory of liability alleged by the attorney general to determine whether coverage exists. See *Brumley*, 265 Kan. at 814.

*A. Did the policy provide coverage to the appellant in the suit filed by the attorney general?*

The attorney general alleged Martinez had engaged in the unauthorized practice of law and had engaged in deceptive and unconscionable acts and practices in violation of the KCPA.

Some states have held that consumer protection violation suits brought by the attorney general are not covered by a general insurance policy. In *O'Neill Investigations v. Ill. Emp. Ins., etc.*, 636 P.2d 1170, 1176-77 (Alaska 1981), the Alaska Supreme Court concluded that the general policy in question was unambiguous in its coverage of individualized injury and, since the attorney general's action was not one for an individualized injury, coverage did not exist. Other jurisdictions have resolved this issue on a damages distinction, concluding that an attorney general's action was not a claim for "damages." *Seaboard v. Williams' NW Chrysler*, 81 Wash. 2d 740, 744, 504 P.2d 1139 (1973); *Haines v. St. Paul Fire & Marine Ins. Co.*, 428 F. Supp. 435, 441-42 (D. Md. 1977).

Kansas courts have not addressed this issue. The KCPA is intended "to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623(b). Remedies under the KCPA include obtaining a declaratory judgment, obtaining a restraining order, recovering damages on behalf of consumers, and recovering reasonable expenses and investigation fees. K.S.A. 50-632(a). Also under the KCPA, a violator may be subject to civil penalties. K.S.A. 50-636. Either the attorney general or an aggrieved consumer may initiate an action under the KCPA. K.S.A. 50-632; K.S.A. 50-634.

If this court were to adopt an individualized injury interpretation of the insurance contract, such as that taken by the Alaska Supreme Court, no further inquiry is necessary—coverage for an action initiated by the attorney general would not exist. Alaska's rationale relies on the role its attorney general plays in its consumer protection act. Its attorney general is responsible for bringing cases of this kind to " 'protect the public from the kinds of business practices which are prohibited by the statute; it is not to seek redress for private individuals. Where relief is provided for private individuals by way of restitution, it is only incidental to and in aid of the relief asked on behalf of the public.' " *O'Neill*, 636 P.2d at 1176 (quoting *Seaboard*, 81 Wash. 2d at 746). Under Alaska law, restitution is ancillary to the action. Alaska Stat. § 45.50.501(a) (1998). Kansas courts and comments to our KCPA do not express a similar intent; our statute places recovery for an aggrieved consumer on an equal footing with other enforcement remedies bestowed on our attorney general. K.S.A. 50-632.

Furthermore, a plain reading of the contract does not suggest such a restrictive interpretation. The policy purports to provide coverage for damages Martinez is obligated to pay as a result of certain defined injuries. The policy does not require the damages to be awarded to an injured person, simply that the damages result "because of bodily injury, property damage, personal injury or advertising injury." For these reasons, this policy might provide coverage for damages resulting from an action initiated by the attorney general; further inquiry into the attorney general's allegations and potential coverage is necessary.

### 1. Unauthorized practice of law.

Martinez argues that this violation is covered as a personal injury "arising out of oral or written publication of material that violates a person's right of privacy." His argument is essentially that since he was not an attorney, he was not bound by the Kansas Rules of Professional Conduct regarding client confidentiality. Therefore, anything told to him by one of his clients was subject to being published; that would be a violation of that client's "right of privacy," which was being enforced through the attorney general's suit.

The attorney general's action against Martinez was for the unauthorized practice of law, not an action on behalf of an injured client claiming a violation of his or her right to privacy due to publicized confidentialities. The proper inquiry is not speculation as to the attorney general's motives in bringing the suit, but whether the unauthorized practice of law is a covered injury, either on the face of the policy or ambiguously hidden within it. See *Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 731, 864 P.2d 204 (1993) (finding no merit in appellee's speculative arguments). The unauthorized practice of law does not fit within any of the covered events found within the policy: bodily injury, property damage, personal injury, or advertising injury.

### 2. Two Violations of Kansas Consumer Protection Act, K.S.A. 50-626(b)(2).

K.S.A. 50-626(b)(2) provides that a deceptive act includes "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact."

Martinez argues these two violations result from his representations to two clients that he had advanced legal knowledge and experience. As with his previous argument, he argues that these violations of two clients' rights to privacy are covered under advertising injury and personal injury coverage.

Again, the proper inquiry is not speculation as to the attorney general's motives in bringing the suit, but whether the willful use of exaggeration, falsehood, innuendo, or ambiguity as to a material fact is a covered injury, either on the face of the policy or ambiguously hidden within it. Such exaggeration does not fit within any

of the covered events found within the policy: bodily injury, property damage, personal injury, or advertising injury.

    *3. 201 Violations of Kansas Consumer Protection Act, K.S.A. 50-627(b)(6).*

Martinez argues that while he was charged and found guilty of violating K.S.A. 50-627(b)(6), "that the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment," these 201 counts were in reality violations of K.S.A. 50-626(b)(4), "disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts," which is a covered injury under the policy.

Webster's New Collegiate Dictionary 364 (9th ed. 1991) defines disparage as: "1: to lower in rank or reputation: DEGRADE 2: to depreciate by indirect means (as invidious comparison): speak slightingly about." While a creative argument, it is nonetheless without merit; Martinez' misleading statements cannot be equated to be disparaging remarks.

    *4. One Violation of Kansas Consumer Protection Act, K.S.A. 50-626(b)(4).*

K.S.A. 50-626(b)(4) provides that a deceptive act includes "disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts."

Martinez argues that the policy provides coverage under advertising injury or personal injury provisions. Within the definition of both, the policy provides that coverage exists for "injury arising out of . . . oral or written publication of material that . . . disparages a person's or organization's goods, products or services."

The policy clearly provides coverage for damages arising from an appellant's publication of material disparaging a person's services. Had a Wichita attorney sued for those remarks, there would be no question that such remarks would be covered within the policy; however, at issue is whether the policy covers such remarks when the suit is not brought by the disparaged individual, but by the State.

One reasonable interpretation of the contract is that advertising injury coverage protects Martinez from remarks he might make that disparage another; another reasonable interpretation is that coverage only extends to the disparaged person and suits by the disparaged person.

"The general rule that insurance policies are to be construed in favor of the insured and against the insurance company arises only if there exists a rational basis for construing the policy itself. That is, the contract must contain provisions or language of doubtful, ambiguous or conflicting meaning, as gathered from a natural interpretation of its language. [Citations omitted.]' " *Anderson v. Nationwide Life Ins. Co.*, 6 Kan. App. 2d 163, 165, 627 P.2d 344, *rev. denied* 229 Kan. 669 (1981) (quoting *Casey v. Aetna Casualty & Surety Co.*, 205 Kan. 495, 498-99, 470 P.2d 821 [1970]).

Applying this standard, "damages" arising from Martinez' disparaging remarks, enforced by the attorney general under the KCPA, may be covered unless the damages are excluded on other grounds.

The policy excludes personal injury or advertising injury "arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity." Martinez seeks coverage for his disparaging remarks. A material question of fact remains—whether his remarks were *made with knowledge* of their falsity or *made with reason to know* of their falsity. However, summary judgment may be appropriate if, as a matter of law, civil penalties may not be insured against.

B.   *Are civil penalties included as "damages" under the policy?*

In granting State Farm's summary judgment motion, the trial court determined that the policy did not provide coverage for the civil penalties sought by the attorney general.

This court has held similar provisions within an insurance policy provided coverage for exemplary or punitive damages where penalties were not expressly excluded by the policy language. *Southern American Ins. v. Gabbert-Jones, Inc.*, 13 Kan. App. 2d 324, 328, 769 P.2d 1194 (1989). In *Gabbert*, this court held "all sums" language in an insurance policy was unambiguous and unqualified, covering punitive and exemplary damages; the policy did not say all sums awarded as compensatory damages or that all sums awarded except punitive damages will be paid. 13 Kan. App. 2d at

328. Under this rationale, civil penalties would be included within the broad language "those sums." Martinez' policy states State Farm "will pay *those sums* that the insured becomes legally obligated to pay as damages." (Emphasis added.) In *Gabbert,* the appellee would pay " '*all sums* which [Gabbert] . . . is legally obligated to pay as damages.' " 13 Kan. App. 2d at 325. Because State Farm points to no exclusionary language in its policy, absent some overriding public policy against such coverage, civil penalties awarded under a covered injury would be covered.

State Farm argues that the civil penalties sought by the attorney general are penal in nature and therefore are not "damages" as defined by the policy. This issue has not been addressed in Kansas. An examination of many jurisdictions which have addressed this issue leads to the conclusion that there is a split of authority. See *Travelers Ins. v. Waltham Indus. Laboratories,* 883 F.2d 1092 (1st Cir. 1989) (finding no coverage with a general policy for civil penalties); *Governmental Interinsurance Ex. v. City of Angola,* 8 F. Supp. 2d 1120 (N.D. Ind. 1998) (finding civil penalties covered within the policy triggering insurer's duty to defend); *A.Y. McDonald Industries v. INA,* 475 N.W. 2d 607 (Iowa 1991) (finding "damages" not broad enough to encompass civil penalties); *Weeks v. St. Paul Fire & Marine Ins. Co.,* 140 N.H. 641, 673 A.2d 772 (1996) (finding penalty and fines to be covered by general insurance); *Drexel Group v. Vigilant Ins.,* 157 Misc. 2d 198, 213, 595 N.Y.S.2d 999 (1993) (finding that "[t]he sting of criminal penalties is not to be soothed by permitting its payment out of an insurance pool rather than directly by the wrongdoer").

The Kansas Supreme Court has held that it is against the public policy of this state to allow a wrongdoer to purchase insurance to cover punitive damages. *Koch v. Merchants Mutual Bonding Co.,* 211 Kan. 397, 404, 507 P.2d 189 (1973).

"Since exemplary damages, as we have endeavored to illustrate, are awarded not to enrich or reward a plaintiff but rather to serve as an object lesson both to a wrongdoer, himself, and to others who might be tempted to follow his wayward ways, the purpose they are intended to serve would be thwarted if the additional financial burden were cast upon innocent shoulders." 211 Kan. at 404.

This reasoning is controlling; it would be contrary to public policy to allow a wrongdoer to insure against civil penalties associated with his or her own actions. For this reason, the judgment of the trial court granting summary judgment to State Farm is affirmed.

Affirmed.