**D. Alfred DeSHONG, Appellant,**

v.

**MID–STATES ADJUSTMENT, INC., Defendant,**

**St. Paul Fire & Marine Insurance Company, Respondent.**

No. WD 48344.

Missouri Court of Appeals, Western District.

April 12, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Jimmie D. James, M. Ellen Bigge, James & Biagioli, Independence, for appellant.

Robert A. Horn, Hibberd V.B. Kline, III, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, attorneys for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This is an appeal taken from dismissal of a garnishment action for punitive damages by D. Alfred DeShong (DeShong) against St. Paul Fire & Marine Insurance Company's (St. Paul).

A brief overview of this case is in order. The respondent, St. Paul, was the insurer of an insurance adjusting company, against whom DeShong had a judgement. DeShong was treating a patient who suffered injuries in a bus accident who was suing the bus company. An adjuster for the company insuring the bus company emphatically told the patient to discontinue using DeShong's services. She complied. DeShong sued for tortious interference with a contract, and obtained a judgement for actual and punitive damages against the adjusting company, which in turn was insured by the respondent St. Paul.

DeShong, an osteopath, began treating Ms. Johnson (Johnson) some six weeks after she sustained injuries in a bus accident. The bus was insured by Clarendon National Insurance Company (Clarendon), who in turn, hired Mid–State Adjustment, Inc. (Mid–State), as its adjustor, to settle its claim with Johnson. Mid–State was insured by St. Paul under a "Special Business Errors and Liability Protection Policy" (Policy), which provided St. Paul would defend Mid–State pursuant to the policy's terms and conditions. The pertinent portions of the policy will be set out later.

Mid-state assigned Mr. Windler, an adjustor, to Johnson's case against Clarendon. Windler went to Johnson's home and screamed at her for using an osteopath, insisting Mid–State would not pay for DeShong's services, and that Johnson would have to return to medical doctors to have her treatment covered. After this incident, Johnson terminated her treatment with DeShong and settled her claim with Clarendon. DeShong then sued Mid–State for tortious interference with a contractual or business relationship due to Windler's actions, since they caused Johnson to terminate her professional relationship with DeShong. The DeShong petition specifically alleged "the conduct of the defendants was intentional" and caused the doctor-patient relationship to be terminated.

St. Paul agreed to defend Mid–State under a reservation of rights (i.e.; they would defend the action but they reserved the right to refuse indemnification) on the tortious interference claim.

On the day of trial, DeShong and Mid–State entered into an agreement pursuant to § *537.065, RSMo.1986*, which generally permits a person suffering bodily injuries and a tort-feasor to contract to limit any recovery to insurance proceeds, agreeing that DeShong would not levy against anyone except Mid–State's insurers (St. Paul). In the bench trial between DeShong and Mid–State, which was essentially uncontested by Mid–State, the court held in favor of DeShong for $1,476 in actual damages for tortious inter-

ference and $125,000 punitive damages based on the reckless indifference and outrageous nature of Windler's conduct. After the judgement was final, DeShong filed a writ of execution and summons of garnishment to be served against St. Paul based on the Mid–State/DeShong agreement and the Policy.

This appeal followed a stay of the entire garnishment and the court entering an order dismissing DeShong's entire garnishment action on the grounds under both Missouri and Kansas law[1]: 1) the policy did not cover punitive damages, rather St. Paul only had to indemnify Mid–State to compensate for loss that results from "error, omission, or negligent act committed in the conduct" of its business; 2) Windler's actions were found to be "malicious acts" not covered by the policy; and 3) § 537.065 was inapplicable to the judgment since the underlying action did not involve bodily injury or death as required by the statute, and that by endorsing the Policy, Mid–State was obligated to cooperate and assist St. Paul with the defense and was prohibited from confessing judgement.

Although the attempted garnishment covered both actual and punitive damages, the parties here limited the scope of this appeal solely to the issue of whether the Policy covered exposure for punitive damages assessed against Mid–State. That being the case, the issue is decided by the trial court's conclusions of the policy language pertaining to coverage for punitive damages, 1) above.

■ Review of the trial court's decision is governed by Rule 73.01 and the principles established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision must be affirmed unless there is not substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32.

The trial court ruled the policy did not cover punitive damages. The pertinent language of the Policy states St. Paul will pay amounts Mid–State is "legally required to pay to compensate others for loss that results from error, omission, or negligent act

committed in the conduct of [Mid–State's] business." (emphasis added). The trial court held the term "compensate" did not include punitive damages. This court agrees.

■ Under the laws of Kansas and Missouri punitive damages are not compensatory in nature. *Southern American Ins. v. Gabbert–Jones Inc. Co.*, 769 P.2d 1194, 1196–97 (Kan.App.1989); *Schnuck Markets Inc. v. Transamerica Ins.*, 652 S.W.2d 206 (Mo.App. 1983). Moreover, punitive damages are never awarded as compensation. *Heartland Stores, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39, 42–43 (Mo.App.1991), citing *Schnuck Markets, Inc.*, 652 S.W.2d 206 (Mo.App.1983); *Southern American Ins.*, 769 P.2d at 1196–97. The language used in St. Paul's policy is narrower than in other cases, where blanket insurance policies were issued and punitive damage still were not allowed. In those cases, the policies provided for "all sums which the insured may become legally obligated to pay as damages because of bodily injury...." *See Schnuck Markets*, 652 S.W.2d at 208; *Southern American Ins.*, 769 P.2d 1194 (policy covered punitive damages but court held such a provision calling for coverage of punitive was against public policy at that time).

■ The case at bar is distinguishable from those where it has been held the policy included punitive damages. Appellant cites *Colson v. Lloyds of London*, 435 S.W.2d 42, 46–47 (Mo.App.1968) to support the proposition that the policy included liability for coverage of punitives. In *Colson*, however the policy covered "loss by reason of liability imposed by law upon the assured, by reason of false arrest ... which may be committed ... during the ... period of this certificate" (emphasis added). The language in the policy at issue says it will insure against amounts the insured must compensate for loss as a result of any wrong covered in the policy. There is no language which broadens this policy to cover punitive damages. *See Schnuck Markets, Inc.*, 652 S.W.2d at 208 citing *Crull v. Gleb*, 382 S.W.2d 17, 23 (Mo. App.1964); *Heartland Stores*, 815 S.W.2d 39;

---

1. Both appellant and respondent agreed Missouri law controlled certain issues and Kansas law others; but, for purposes of this opinion, both state's laws were examined and the results are the same applying either.

*See Southern American, Ins.* 769 P.2d at 1197. This court will not rewrite the policy entered into by the parties to cover punitive damages, but rather this court assumes the parties by agreeing to the policies terms, they agreed not to be covered regarding liability on exemplary damages. *See Schnuck Markets,* 652 S.W.2d at 211–212; *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's London,* 761 F.Supp. 1485, 1488 (D.C.Kan.1991).

Having reached the conclusion the policy did not provide coverage for punitive damages the court does not reach the question of whether public policy prohibits insurance coverage for vicariously imposed punitive damages either in Missouri or Kansas[2]. *Schnuck Markets,* 652 S.W.2d at 212. The trial court was correct in denying a garnishment for punitive damages based on the ruling the policy did not provide coverage. It is unnecessary to examine or discuss the other two reasons give for the decision, which is affirmed.

This point is denied and the judgment is affirmed.

All concur.

---

**2.** K.S.A. 40–2,115 (effective April, 1984) permits coverage for punitive damages, but does not mandate or even presume them.