**Charles NAUCKE and John Duvall, Appellants,**

v.

**MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND, Respondent.**

**No. WD 60998.**

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

———

Larry Bagsby, St. Charles, for Appellants.

Michael G. Berry, Thomas G. Pirmantgen, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Appellants Charles Naucke and John Duvall appeal the grant of summary judgment in favor of respondent Missouri Public Entity Risk Management Fund (MOPERM). Naucke and Duvall had brought suit against MOPERM seeking to recover the punitive damage portions of judgments granted against a city employee covered

by the Fund. MOPERM had voluntarily paid the compensatory damages and attorney fee portions of appellants' judgments. MOPERM sought summary judgment on the basis that punitive damages were not encompassed within Fund coverage or, in the alternative, that such coverage was void as against public policy. The trial court granted MOPERM's motion for summary judgment, finding that the insurance provided by MOPERM specifically excludes coverage for punitive damages. We affirm the trial court's grant of summary judgment in favor of MOPERM.

## Factual and Procedural Background

Naucke and Duvall filed suit against the City of Park Hills and the City Administrator in federal court. The substance of the federal court action was a claim under 42 U.S.C. § 1983, contending that the City Administrator had terminated Naucke and Duvall's employment in violation of the First Amendment. The City and the City Administrator conceded that the Administrator's conduct was within the scope and course of his employment.

The federal suit proceeded to jury trial, where Naucke was awarded $8,542 for lost wages, $50,000 for emotional distress, and $100,000 in punitive damages. Duvall was awarded $6,750 in lost wages, $10,000 for emotional distress, and $30,000 in punitive damages. Judgment was entered in favor of Naucke and Duvall for those amounts, plus attorney fees.

MOPERM subsequently satisfied those portions of the judgment corresponding to the lost wages, emotional distress damages, and attorney fees. It refused to make any payment regarding the awards of punitive damages, however, claiming that the punitive damage award was not covered by the Fund. Naucke and Duvall contended that there was no policy provision in the MOPERM memorandum of coverage excluding punitive damages awards from coverage.

Following MOPERM's refusal to satisfy the punitive damage award, Naucke and Duvall brought a second action in Cole County, seeking a declaratory judgment holding the Fund responsible for the unsatisfied portion of the judgments against the City Administrator. Cross-motions for summary judgment were filed by the parties. The trial court, without analysis or discussion, entered summary judgment in favor of the Fund and denied Naucke and Duvall's motion. This appeal follows.

## Discussion

Our review of the trial court's grant of summary judgment is *de novo*. *Farmers' Elec. Coop., Inc. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 269 (Mo. banc 1998). We view the facts in the light most favorable to Naucke and Duvall. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). To sustain the summary judgment, we must conclude that the facts, viewed in that light, render the Fund entitled to judgment as a matter of law. *Id.* at 377.

Naucke and Duvall's first point on appeal alleges that the trial court erred in granting summary judgment in favor of MOPERM on the basis that punitive damages were not subject to Fund coverage. To decide this issue, we must construe both RSMo. § 537.075, *et seq.*, RSMo., and the MOPERM memorandum of coverage. Because statutorily mandated coverage supersedes the agreement of the parties, we must first determine whether there are any clauses in the memorandum of coverage that are contrary to statutory provisions. *Younger v. Mo. Pub. Entity Risk Mgmt. Fund,* 957 S.W.2d 332, 335–36 (Mo. App.1997). This first involves ascertaining the legislative intent, giving words their

plain and ordinary meaning. *Connor v. Monkem Co.*, 898 S.W.2d 89, 90 (Mo. banc 1995). In its second part (interpreting the memorandum of coverage), this task is essentially the same as interpreting an insurance contract, which is an issue of law when, as here, there are no facts in dispute. *See Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 824 (Mo.App. 1998). If we find that the plain language within the memorandum to be unambiguous, we apply the meaning of that language without resort to rules of construction. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 301–02 (Mo. banc 1993). Conversely, if we find that the language is ambiguous, that ambiguity should be resolved in favor of Naucke and Duvall. *Id.* They argue first, that punitive damages fall within the general provisions regarding what the plan covers. Secondly, they argue that punitive damages do not fall within a specific exclusion to coverage. The resolution of these arguments involves consideration of both § 537.705, *et seq.* and the memorandum of coverage.

### Is coverage of punitive damage required or prohibited by statute?

■ Section 537.705.1(2), RSMo, provides in relevant part that:

Moneys in the fund shall be available for:

\* \* \*

(2) The payment and settlement of tort claims against any officer or employee of a participating public entity **for which coverage has been obtained in accordance with the coverages offered by the board** when the claim is upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the participating public entity:

(Emphasis added). The General Assembly added the highlighted language in 1999, after this court's decision in *Younger*. In *Younger*, we determined that the statute mandated coverage in a malpractice claim against a nurse employed by a city hospital, even though the memorandum of coverage contained an exclusion for liability due to a health care facility's provision or failure to provide proper medical care. *Younger*, 957 S.W.2d at 335. In reaching that determination, we held that the specific provisions of § 537.705.1(2), RSMo, for tort claims prevailed over general language in § 537.705.1(1), RSMo, limiting coverage to claims for which the public entity has, itself, obtained MOPERM coverage. *Id.* at 336. We concluded that "moneys in the fund are available for the payment and settlement of tort claims regardless of whether the entity obtained such coverage. In other words, it is unnecessary for participating public entities to obtain this coverage because it is mandated by statute." *Id.* at 337. The language added by the legislature in 1999 permits the policy coverage to be limited either by the terms of the coverage offered by the Fund or the coverage obtained by the covered entity.

In support of their arguments, both parties direct our attention to *Younger*. It is inapplicable, here, for two reasons. First, the court in *Younger* was concerned with the *type of tort claims* that were covered under § 537.705.1(2), RSMo. MOPERM concedes both that claims for discrimination such as Naucke and Duvall brought were covered claims and that the City Administrator was acting in his official capacity as required under the statute. Secondly, *Younger* was not concerned with the nature and type of damages recoverable under Fund coverage. Naucke and Duvall do not argue and, in fact, concede that there is no language in the MOPERM statute *requiring* punitive damage cover-

age (regardless of the type of claim), which would set up a *Younger* type of conflict between the statute and the Memorandum of Coverage. A reading of the MOPERM statute reveals little mention of damages or damage types (apart from reference to monetary damage limits) other than those set forth in § 537.755, RSMo. That section proscribes the use of Fund money for certain types of claims (*e.g.* Chapter 287 Workers' Compensation claims). It also prohibits payment of Fund moneys for two types of damages:

(2) Fines or penalties threatened or imposed for violation of any civil or criminal statute, administrative regulation or county or municipal ordinance;

(3) Attorney's fees and expenses incurred in the defense of charges that criminal statutes or county or municipal ordinances were violated.

Section 537.755.1(2)–(3). MOPERM does not argue that these (or any other) provisions of the Fund statute constitute "statutory exclusions" of punitive damage coverage. We agree with Naucke and Duvall that the Fund statute, absent any other provision, does not prohibit punitive damage coverage. Naucke and Duvall also admit, however, and, we, likewise agree, that the Fund statute does not mandate such coverage. To determine whether such coverage is required, then, we must look to the language within the memorandum of coverage.

### Does the memorandum of coverage encompass punitive damages?

MOPERM contends that punitive damages do not fall within the ambit of the memorandum of coverage. The essence of their argument is that the memorandum of coverage only provides coverage for "losses," and punitive damages are not "losses" because they do not constitute compensation for damages but are instead imposed to punish tortfeasors. The coverage clause of the MOPERM memorandum of coverage states, in relevant part (emphasis in original):

[F]or all claims against public officials and employees, **MOPERM** will pay the **ultimate net loss** which the **Covered Party** shall be legally obligated to pay by reason of liability:

a. Imposed by law, or

b. Assumed by contract, for damages because of:

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

COVERAGE C—PUBLIC OFFICIALS ERRORS AND OMISSIONS LIABILITY

COVERAGE D—PERSONAL INJURY LIABILITY

to which this memorandum applies, caused by or arising out of an **occurrence.**

The memorandum of coverage further defines "ultimate net loss" as (emphasis in original, italics added):

the sum actually paid or payable in cash in the settlement or satisfaction *of losses,* for which the **covered party** is liable either by (1) adjudication or (2) compromise with the written consent of **MOPERM,** after making proper deduction for all recoveries and salvages collectible. Ultimate net loss does not include **defense costs.**

In support of their competing constructions of the above policy language, the parties spend much of their briefs arguing whether this case is controlled either by *Colson v. Lloyd's of London,* 435 S.W.2d 42 (Mo.App.1968) or *DeShong v. Mid–States Adjustment, Inc.,* 876 S.W.2d 5 (Mo. App.1994). The insurance policy in *Colson* stated that it covered "loss by reason of

liability imposed by law upon the [in-]sured," which utilized the term "loss" as referring to a liability incurred by the *insured.* 435 S.W.2d at 46. The court held that the policy extended coverage to punitive damages imposed upon the insured, because "the language of the policy before us does not limit recovery to actual or compensatory damages but undertakes to pay for *all* losses." *Id.* at 47 (emphasis added).

A different result was reached in *DeShong* where this court was faced with policy language that covered amounts the insured was "legally required to pay to compensate others for loss." 876 S.W.2d at 7. We distinguished *Colson,* holding that the policy language in the earlier case did not differentiate the nature of the loss as compensatory or not. *Id.* at 7–8. Further, the term "loss" in *DeShong,* referred not to a loss incurred by the insured but, instead, by the party seeking to recover against the policy. *Id.* at 7.

We need not, however, resolve the meaning of the term "actual net loss," in this case. Both the *Colson* and *DeShong* policies share one common feature: neither contained any express reference to punitive damages. The Memorandum of Coverage issued by the Fund in this matter contains an express reference in the exclusion section to punitive damages. As will be discussed below, that provision expressly excludes coverage for punitive damages. As such, we need not resort to interpretation of the term "actual net loss" in the memorandum of coverage.

### Is there an applicable exclusion removing punitive damages from coverage?

■ The present form of § 537.705.1(2), RSMo, appears to permit the Fund to carve out exceptions to coverage through policy language. The Fund contends that such a policy exception applies here, excluding punitive damages from coverage. It specifically relies upon this language from the memorandum of coverage:

### IV. WHAT MOPERM WILL NOT COVER (EXCLUSIONS)

This memorandum does **not** apply:

\* \* \*

M. To punitive and exemplary damages, fines or penalties threatened or imposed for violation of any civil or criminal statute, administrative regulation or county or municipal ordinance.

Naucke and Duvall contend that the language beginning "threatened or imposed" applies to both "punitive and exemplary damages" and "fines or penalties." They suggest that the policy language is ambiguous and that it should be construed against the drafter. *See Cameron Mut. Ins. Co. v. Marler,* 926 S.W.2d 62, 64 (Mo. App.1996).

Naucke and Duvall point out that the award of punitive damages, here, arose from the defendant's violations of their civil rights under the constitution. They stress that 42 U.S.C. § 1983 was merely the procedural vehicle for seeking recovery for the civil rights violation. The punitive damages, they argue, were not awarded for a violation of that statute. They also point to a line of cases that characterize § 1983 claims as being essentially tort claims in nature. Given that the punitive damages were awarded for violations of the U.S. Constitution, are more properly characterized as tort claims, and were not due to a violation of a statute, Naucke and Duvall conclude that the exception quoted above is inapplicable to the punitive damages awarded here.

The Fund takes the position that the policy language is not ambiguous. It argues that the language "threatened or im-

posed for violation of any civil or criminal statute, administrative regulation or county or municipal ordinance" applies only to "fines and penalties." As such, the Fund contends that all punitive or exemplary damages are excluded from coverage. The Fund's argument is supported by comparing the memorandum of coverage to the statutory exclusions set forth in § 537.755.1(2), RSMo. The language within the memorandum of coverage is identical to this statutory section, with the exception of the addition of the phrase "to punitive and exemplary damages." The separate addition of that phrase suggests that it should be treated separately from the rest of the exclusion.

The punctuation within the memorandum exclusion also confirms the validity of the Fund's argument. A comma separates the "punitive and exemplary damages" clause from the remainder of the exclusion. In our view, that comma divides the provision into two portions, creating an exclusion for punitive damages and a separate exclusion for fines or penalties threatened or imposed for violation of any civil or criminal statute, administrative regulation, or county or municipal ordinance. As such, the structure of the language compels the conclusion that the policy exclusion for punitive damages is not limited to damages imposed or threatened due to violation of a statute, ordinance, or similar provision. We find no ambiguity in the exclusion, and we conclude that the language of the memorandum of coverage expressly excludes coverage for all punitive damages.

As the trial court correctly determined that the memorandum of coverage did not permit Naucke and Duvall to recover their punitive damages claim against the Fund, summary judgment was properly granted in favor of MOPERM. Naucke and Duvall's first point on appeal is therefore denied.

Naucke and Duvall's second point on appeal contends that the trial court erred in granting summary judgment in favor of MOPERM upon the alternate reasoning that extending Fund coverage to punitive damages violates public policy. Having determined that the MOPERM memorandum of coverage excludes coverage for punitive damages, it is unnecessary for us to take up the question of whether the trial court's grant of summary judgment may be affirmed on some alternate ground. Point denied.

Having found that the trial court did not err in granting MOPERM's motion for summary judgment, the judgment of the trial court is hereby affirmed.

PATRICIA BRECKENRIDGE, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.