**STATE of Missouri, ex rel. Robert K. CRAVENS, Respondent,**

v.

**Jeremiah (Jay) W. NIXON, Attorney General of the State of Missouri, and Michael N. Keathley, Commissioner of Administration, State of Missouri, Appellants.**

No. WD 67690.

Missouri Court of Appeals, Western District.

June 29, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2007.

Application for Transfer Denied Oct. 30, 2007.

first point, is Ms. Peterson a prevailing party. Therefore, the question of attorney's fees need not be addressed.

F. Randall Waltz, III, Jay R. Anielak, Co–Counsel, Jefferson City, MO, for appellants.

Robert L. Presson, Assistant Attorney General, Jefferson City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

Jeremiah W. Nixon, Attorney General of the State of Missouri, and Michael N. Keathley, Commissioner of Administration for the Office of Administration, appeal from a writ of mandamus issued by the Circuit Court of Cole County ordering them to release funds from the State Legal Expense Fund to satisfy a judgment obtained by Robert K. Cravens against former state employee Jerry Tolson.

Cravens was an inmate in the custody of the Missouri Department of Corrections and was housed at the Algoa Correctional Center from January 2004 to June 2004. While at Algoa, Cravens was assigned to work as a cook in the bakery. At that time, Tolson was employed by the Department of Corrections as a food service cook in that bakery, and in that capacity, he supervised inmate cooks, including Cravens. While Cravens was working in the bakery, on several occasions, Tolson ordered Cravens to perform duties in secluded areas of the bakery and then sexually assaulted him.

Cravens ultimately requested a transfer to a different correctional facility, which was granted. After investigating Cravens's complaints of sexual assault, the Department fired Tolson. Tolson subsequently entered a guilty plea to one count of sexual contact with an inmate.

On April 1, 2005, Cravens filed a petition against Tolson in the United States District Court for the Western District of Missouri. Cravens asserted claims of assault, battery, and a violation of his civil rights under 42 U.S.C. § 1983. The Attorney General denied Tolson's request that

the Attorney General's Office defend him in that action.

Following a hearing, on November 10, 2005, the U.S. District Court entered its judgment against Tolson for $250,000 plus costs, attorney's fees, and interest. The U.S. District Court found that Tolson had forcibly sexually assaulted Cravens "under the color of law" and that Tolson's actions "arose out of and were performed in connection with his official duties on behalf of the State of Missouri." [1] That judgment was not appealed.

On December 9, 2005, Cravens's attorney made a written demand of Appellants for payment of the judgment against Tolson from the State Legal Expense Fund. On January 25, 2006, the Office of the Attorney General sent Cravens a letter denying his request for payment, claiming that Tolson's conduct did not arise out of and was not performed in connection with his official duties on behalf of the State.

Cravens responded by filing a petition for writ of mandamus in the Circuit Court of Cole County alleging that the Attorney General and the Commissioner of Administration had a ministerial duty to pay the judgment entered against Tolson under § 105.711. On October 4, 2006, the circuit court granted Cravens's motion and issued its writ of mandamus ordering Appellants to authorize payment of the judgment from the Legal Expense Fund. The circuit court also entered an award of attorney's fees for the prosecution of the mandamus action. Appellants bring four points on appeal.

As in any civil case, our review is governed by the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and accordingly, we "will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Klokkenga v. Carolan*, 200

---

1. In its judgment, the U.S. District Court found, in relevant part:

4. Defendant Tolson was employed by the Department of Corrections as a food service cook at Algoa, during the time Plaintiff was incarcerated at Algoa.

5. As part of his duties, Tolson, supervised the inmate line cooks that worked in Algoa's bakery. Tolson's supervisory duties allowed him to spend unmonitored time with inmates.

6. Plaintiff worked in the bakery at Algoa in February 2004.

7. Plaintiff was supervised in the bakery by Tolson.

8. On three occasions, Tolson engaged in forcible oral sex with Plaintiff during Plaintiff's work hours in the bakery.

9. Plaintiff did not consent to any of the episodes of oral sex.

10. Tolson used physical force, threats, and coercion in order to engage in oral sex with Plaintiff.

11. On two other occasions, Tolson forcibly placed Plaintiff's penis in his rectum. Plaintiff performed anal sex on Tolson out of fear he would be harmed if he did not.

12. Approximately three weeks prior to Plaintiff transferring from Algoa in June 2004, Tolson forcibly placed his penis in Plaintiff's rectum and performed anal sex on Plaintiff. Plaintiff physically resisted Tolson while Tolson performed the anal sex.

\* \* \*

16. All acts by Defendant Tolson described in this Judgment were carried out "under the color of law."

17. All acts by Defendant Tolson described in this Judgment arose out of and were performed in connection with his official duties on behalf of the state of Missouri.

18. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishments.

19. Defendant Tolson's acts that subjected Plaintiff to sexual contact and deviate sexual intercourse with Tolson, by means of physical force, threats, and coercion, violated Plaintiff's right to be free from cruel and unusual punishments.

S.W.3d 144, 152 (Mo.App. W.D.2006) (internal quotation omitted). In reviewing the trial court's judgment, "[a]n appellate court reviews the evidence and all reasonable inferences in the light most favorable to the judgment and disregards all contrary evidence and inferences." *Surrey Condo. Ass'n v. Webb,* 163 S.W.3d 531, 536 (Mo.App. S.D.2005). " 'Our primary concern is the correctness of the trial court's judgment, not the route it took to get to that result, and therefore, we will affirm the judgment if it is supported by any reasonable theory, even if different from that expressed by the trial court.' " *Klokkenga,* 200 S.W.3d at 152 (quoting *Stadium W. Props., L.L.C. v. Johnson,* 133 S.W.3d 128, 132 (Mo.App. W.D.2004)).

■ In their first point, Appellants contend that the circuit court erred in issuing its writ because Tolson's tortious conduct was not covered by the Legal Expense Fund. Appellants claim that Tolson's sexual assault of Cravens was not conduct arising out of and performed in connection with his duties as required by statute.

■ "As in many other states, the General Assembly of the [S]tate of Missouri has chosen to defend and pay claims against state employees arising out of the performance of their official duties for the state." *Cottey v. Schmitter,* 24 S.W.3d 126, 129 (Mo.App. W.D.2000). To this end, the legislature enacted § 105.711, which provides, in relevant part:

1. There is hereby created a "State Legal Expense Fund" which shall consist of moneys appropriated to the fund by the general assembly and moneys otherwise credited to such fund pursuant to section 105.716.

2. Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:

* * *

(2) Any officer or employee of the state of Missouri or any agency of the state, including, without limitation, elected officials, appointees, members of state boards or commissions, and members of the Missouri national guard upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state, . . .

* * *

5. All payments shall be made from the state legal expense fund by the commissioner of administration with the approval of the attorney general. . . .

* * *

The state legal expense fund shall be the exclusive remedy and shall preclude any other civil actions or proceedings for money damages arising out of or related to the same subject matter against the state officer or employee, or the officer's or employee's estate. No officer or employee of the state or any agency of the state shall be individually liable in his or her personal capacity for conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state or any agency of the state. . . . § 105.711, RSMo Cum.Supp.2005. Under these statutory provisions, "[f]or coverage to apply, it must be shown that: '(1) [the actor] was an officer or employee of the state or any agency thereof; and (2) the claim is against conduct which arose out of and was performed in connection with [the

actor's] official duties on behalf of the state or any agency thereof.'" *Reid v. Steelman*, 210 S.W.3d 273, 277 (Mo.App. W.D. 2006) (quoting *Cates v. Webster*, 727 S.W.2d 901, 904 (Mo. banc 1987) (emphasis omitted)).

In its judgment, the Circuit Court of Cole County specifically found that Tolson was an employee of a state agency and that his conduct arose out of and was performed in connection with his official duties on behalf of the State of Missouri. In reaching that conclusion, the court found:

14. ..... There is no question that Tolson's position of authority over Relator enabled his tortious conduct.

\* \* \*

16. As a supervisory employee, Tolson's official duties demanded that he provide for the care and custody of Relator. Such duties placed Tolson in a position of trust with Relator. Tolson used his position of trust in order to perpetrate the sexual assaults on Relator. In order for Tolson to repeatedly assault Relator, it was necessary that his conduct not be discovered by others. Tolson used his official authority and threats of official reprisal to maintain secrecy.

17. ... [O]n one occasion Tolson called Relator for extra duty at 3:30 a.m., after he caught Relator smoking a cigarette. During this extra shift, Tolson sexually assaulted Relator. In this context, this Court is persuaded that Tolson's sexual assaults were done, in part, to mete out a perverse form of official punishment.

Appellants contend that the facts found by the circuit court and the evidence in the record do not establish a sufficient connection between Tolson's tortious actions and his work for the State. Appellants claim that Tolson's abuse of his authority to coerce Cravens and to sexually assault him cannot be deemed to have arisen out of Tolson's employment or to have been performed in connection with his official duties on behalf of the State. Appellants argue that the sexual assault of Cravens did not serve to benefit the State in any way and, therefore, cannot be deemed related to the employment.

■■■ Interpreting a statute and determining whether it applies to a given set of facts are questions of law which this court reviews de novo. *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 23 (Mo.App. E.D.2005). We must give effect to the language of a statute as written and will not add words or requirements by implication where the statute is not ambiguous. *McCormack v. Capital Elec. Constr. Co.*, 159 S.W.3d 387, 402 (Mo.App. W.D.2004).

■■■ "The plain language of [§ 105.711] provides coverage for conduct of an employee 'arising out of and performed in connection with his or her official duties.'" *Betts–Lucas v. Hartmann*, 87 S.W.3d 310, 321 (Mo.App. W.D.2002). "The Fund is merely a voluntary assumption of defense and payment of judgments or claims against state employee (*sic*) sued for their conduct arising out of and performed in connection with official duties on behalf of the state." *Dixon v. Holden*, 923 S.W.2d 370, 379 (Mo.App. W.D.1996) ("*Dixon I*"). This Court has "expressly noted that there was no criminal conduct exception and the legislature, if it desired a policy favoring one, should reconsider the Fund statute."[2] *Betts–Lucas*, 87

**2.** "Where a statute incorporates no exception, a court should not insert one by judicial legis-

S.W.3d at 321. Section 105.711 likewise contains no requirement that the employee be acting "in good faith" in performing the acts giving rise the underlying cause of action.[3] *Dixon I,* 923 S.W.2d at 379. The Legislature has not seen fit to amend the statute to include any such exceptions.

■ *Dixon I* "made abundantly clear ... a § 1983 claim for denial of constitutional rights under color of state law is covered in the State Legal Expense Fund, § 105.711.2." *Dixon v. Holden,* 963 S.W.2d 306, 307 (Mo.App. W.D.1997) ("*Dixon II* "). In the case at bar, the federal district court found that Tolson had violated Cravens's constitutional rights under color of law. In subsequently issuing its writ, the state circuit court found that Tolson was charged by the State with the care and custody of Cravens and that he had used the authority granted to him by the State to perpetrate the sexual assaults on Cravens. The circuit court even found that Tolson's acts were done, in part, as an official form of punishment for Cravens's violation of prison rules.[4]

Under the foregoing findings of fact, Tolson's actions constituted conduct arising out of and performed in connection with his official duties. The circuit court did not misinterpret or misapply the law in concluding that the judgment against Tolson entered in the federal district court was covered by § 105.711. Point denied.

In their second point, Appellants claim that the circuit court erroneously concluded that it was bound by the findings of the federal district court because they were not parties to that action and because the issue of whether § 105.711 applied was not fully litigated in that case. Appellants further argue that "[t]he federal court lacked jurisdiction to adjudicate whether an intentional sexual assault was conduct arising out of and performed in connection with an employee's official duties."

■ In its judgment, the circuit court did conclude that the federal judgment was binding as to whether the Tolson's conduct was covered by the Legal Expense Fund. However, the circuit court also independently found that Tolson's conduct arose out of and was performed in connection with his official duties. Since we have already determined that the latter finding was proper, we need not consider whether the circuit court's impression of the binding nature of the federal court's findings was correct. As noted *supra,* when reviewing the judgment in a court tried case, this court must affirm under any reasonable theory supported by the evidence. *Klokkenga,* 200 S.W.3d at 152. Point denied.

In their third point, Appellants claim that the circuit court erred in ordering them to pay the judgment entered against Tolson because any judgment against them was barred by the doctrine of sovereign immunity. Appellants contend that the language of § 105.726.1, RSMo Cum.Supp. 2005, providing that "Sections 105.711 to

lation." *Betts–Lucas v. Hartmann,* 87 S.W.3d 310, 321 (Mo.App. W.D.2002).

3. In *Dixon I,* this Court noted that "[t]here is utterly no reason to read this requirement into the statute, and this contention is rejected out of hand." *Dixon v. Holden,* 923 S.W.2d 370, 379 (Mo.App. W.D.1996).

4. While the State challenges the sufficiency of the evidence to support this finding in passing in its argument on this point, it does not raise a sufficiency of evidence claim in its point relied on nor does it develop this argument beyond a few conclusory sentences. As such, the challenge to the sufficiency of the evidence to support this finding is not properly before this court on appeal. *Klinkerfuss v. Cronin,* 199 S.W.3d 831, 840 n. 2 (Mo.App. E.D.2006).

105.726 do not waive the sovereign immunity of the State of Missouri," served to bar judgment against them in this case.

▬▬▬▬ "Sovereign immunity is a judicial doctrine that precludes bringing suit against the government without its consent. It bars holding the government or its political subdivisions liable for the torts of its officers or agents unless such immunity is expressly waived." *State ex rel. Div. of Motor Carrier & R.R. Safety v. Russell,* 91 S.W.3d 612, 615 (Mo. banc 2002). "Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state." *Betts–Lucas,* 87 S.W.3d at 327.

▬▬▬ Sovereign immunity is simply not applicable to this case. "The legislative provisions creating the Legal Defense Fund constitute[ ] 'a voluntary assumption of defense and payment of judgments or claims against state employees sued for their conduct arising out of and performed in connection with official duties on behalf of the state.'" *Id.* at 327–28 (quoting *Dixon I,* 923 S.W.2d at 379). "[S]overeign immunity [is] not available as a defense by the State to actions seeking recovery from the [Legal Expense] Fund, given that the underlying litigation is against state employees, rather than the state itself." *Id.* at 320.[5] Nothing in the revised language of § 105.726.1 changes that fact. Point denied.

▬▬▬ In their final point, Appellants assert that the circuit court erred in awarding Cravens attorney's fees related to his mandamus action. They contend that such an award is not specifically authorized by

statute and is, therefore, precluded under the State's sovereign immunity.

In making this argument, Appellants ask us to overrule our holding in *Dixon v. Holden,* 963 S.W.2d 306, 308 (Mo.App. W.D.1997), approving a similar award of attorneys fees that were incurred in bringing a declaratory judgment action to collect payment of a judgment from the Legal Expense Fund. We decline Appellant's invitation to reconsider the reasoning of *Dixon II.*

In *Dixon II,* the plaintiff obtained a judgment against two state employees under 42 U.S.C. § 1983 and, after the State refused to pay the judgment, filed a declaratory judgment action against the State Treasurer and Commissioner of Administration asking for a declaration that the State was responsible for satisfying that judgment from the Legal Expense Fund. *Id.* at 307. After obtaining such a declaration, the plaintiff filed an application for attorneys' fees expended in collecting on the judgment from the State. *Id.* In reversing the trial court's denial of that motion for attorney's fees, this Court noted that "Section 1988(b) of the Civil Rights Attorney's Fees Awards Act specifically allows a court to award the successful party attorney fees as costs in any action or proceeding to enforce rights claimed to have been denied under § 1983" and that "state courts may award attorney fees as costs pursuant to § 1988." *Id.* at 308. We held that the defendants were subject to an award of attorney's fees under § 1988 and that sovereign immunity did not shield them from such an award. *Id.*

▬▬▬ Appellants offer no reason to differentiate Cravens's application for attorney's fees in this mandamus action from

---

5. *See also Dixon v. Holden,* 923 S.W.2d 370, 379 (Mo.App.W.D.1996) ("The underlying suit was not versus the state, but two of its employees. Missouri, like many other states, has

chosen by statute to defendant pay judgments. The doctrine of sovereign immunity is not altered nor implicated by this case or this opinion.").

the application filed in the declaratory judgment action in *Dixon II*, and we perceive of no reason to treat them differently. The circuit court had the authority to enter an award of attorney's fees under § 1988, and sovereign immunity does not serve to bar such an award.[6] *Id.* Point denied.

The judgment is affirmed.

All concur.

---

**6.** "Where it is in the court's discretion to award attorney fees under § 1988, the prevailing party should ordinarily recover unless special circumstances would make it unjust." *Dixon v. Holden*, 963 S.W.2d 306, 308 (Mo. App. W.D.1997).