

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| PRISCELLA GILLEY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | **WD76933** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **April 22, 2014** |
| MISSOURI PUBLIC ENTITY RISK | ) | |
| MANAGEMENT FUND, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable Robert D. Schollmeyer, Judge**

**Before Division III:** Thomas H. Newton, Presiding Judge, and
Mark D. Pfeiffer and Cynthia L. Martin, Judges

Priscella Gilley ("Gilley") appeals from the judgment of the Circuit Court of Cole County, Missouri ("trial court"), granting summary judgment in favor of the Missouri Public Entity Risk Management Fund ("MOPERM") on Gilley's equitable garnishment claim. In her sole point on appeal, Gilley argues that the trial court erred in declaring and applying the law when it concluded, as a matter of law, that MOPERM funds were not available as liability insurance coverage to satisfy her tort judgment against a volunteer inmate "trustee" at the Cole

County jail who, after delivering a meal to Gilley (also an inmate at the jail) in his volunteer inmate "trustee" capacity, raped her. We affirm.

## Facts and Procedural History[1]

Gilley filed suit against Darryle Key ("Key"), Cole County, and certain named officials of Cole County in federal court. Gilley's claims included federal claims under 42 U.S.C. § 1983 and state law claims of negligence, assault, and battery based on her allegation that Key, a fellow inmate in the Cole County Jail, while acting as a "volunteer authorized by the Sheriff of Cole County to be an inmate trustee," raped Gilley on November 1, 2006. Subsequently, Gilley voluntarily dismissed all the defendants named in the suit except for Key. The federal court entered a default judgment against Key for $100,000 in actual damages and $200,000 in punitive damages.

MOPERM had issued Cole County a Memorandum of Coverage for liability claims for the period from January 1, 2006, through January 1, 2007. Gilley filed an equitable garnishment suit pursuant to section 379.200, seeking garnishment from MOPERM's policy of coverage to indemnify Key and satisfy the judgment Gilley had obtained against Key in the federal court proceeding. In her First Amended Petition for Equitable Garnishment, Gilley alleged, in pertinent part:

> At the time Plaintiff Gilley was raped by Defendant Key, Defendant MOPERM had had in full force and effect a policy of coverage covering the acts of . . . authorized volunteers who were acting in the course and scope of their duties.
>
> . . . .
>
> . . . Defendant Key was an "authorized volunteer" on November 1, 2006, as contemplated by the policy of coverage issued by Defendant MOPERM.

---

[1] "On review of summary judgment, we view the record in the light most favorable to the party against whom the judgment was entered." *Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 70 n.1 (Mo. App. W.D. 2013).

Defendant Key raped Plaintiff Gilley during *the course and scope of performing his duties* as an inmate "trustee."

(L.F. 10, 12) (emphasis added).

MOPERM and Gilley filed cross motions for summary judgment. The sole issue before the trial court was whether MOPERM funds covered Gilley's judgment against Key. The trial court concluded that MOPERM was entitled to judgment as a matter of law because Key was not insured by MOPERM for his conduct in raping Gilley. The trial court granted MOPERM's motion for summary judgment and denied Gilley's motion.

Gilley appeals.

## Standard of Review

Our review of the trial court's grant of summary judgment is *de novo. Farmers' Elec. Coop., Inc. v. Missouri Dept. of Corrections*, 977 S.W.2d 266, 269 (Mo. banc 1998). We view the facts in the light most favorable to [Gilley]. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). To sustain the summary judgment, we must conclude that the facts, viewed in that light, render the Fund entitled to judgment as a matter of law. *Id.* at 377.

*Naucke v. Mo. Pub. Entity Risk Mgmt. Fund*, 95 S.W.3d 166, 167 (Mo. App. W.D. 2003).

## Analysis

In her sole point on appeal, Gilley argues that the trial court erred in declaring and applying the law when it concluded that MOPERM was not obligated to satisfy the judgment resulting from Key's rape of Gilley. Specifically, Gilley contends on appeal that section 537.705[2] mandates coverage for claims *arising out of and performed in connection with* official duties and that Key was performing his official duties as a jail "trustee" at the time that he raped Gilley. Gilley maintains that such statutorily required coverage cannot be superseded by an

---

[2] All statutory references are to the Revised Statutes of Missouri 2000, as updated, unless otherwise indicated.

agreement between Cole County and MOPERM that restricts coverage to only those acts *performed in the course and scope of duties*.[3]

To decide this issue, we construe both section 537.705 and the MOPERM Memorandum of Coverage:

> Because statutorily mandated coverage supersedes the agreement of the parties, we must first determine whether there are any clauses in the memorandum of coverage that are contrary to statutory provisions. This first involves ascertaining the legislative intent, giving words their plain and ordinary meaning. In its second part (interpreting the memorandum of coverage), this task is essentially the same as interpreting an insurance contract, which is an issue of law when, as here, there are no facts in dispute. If we find that the plain language within the memorandum [is] unambiguous, we apply the meaning of that language without resort to rules of construction. Conversely, if we find that the language is ambiguous, that ambiguity should be resolved in favor of [Gilley].

*Naucke*, 95 S.W.3d at 167-68 (citations omitted).

MOPERM is a public body corporate and politic, created by the Missouri General Assembly in 1986 to provide liability coverage for insured risks to participating public entities and their officers and employees when engaged in their official duties:

> All public entities in Missouri shall have the option of participating in the fund and making annual contributions to the fund in the amount determined by the board in accordance with the provisions of section 379.470 relating to rates established by insurers. Participation in the fund has the same effect as purchase of insurance by the public entity, as otherwise provided by law, and shall have the same effect as a self-insurance plan adopted by the governing body of any political subdivision of the state.

§ 537.705.1. *See Mo. Pub. Entity Risk Mgmt. Fund v. Am. Cas. Co. of Reading*, 399 S.W.3d 68, 71 (Mo. App. W.D. 2013). Under MOPERM's enabling legislation, Cole County is a "participating public entity." § 537.700.2(3).

When enacted, section 537.705.1, RSMo 1986, provided that moneys in the fund shall be available for:

---

[3] Gilley's argument on appeal contradicts the allegations in her First Amended Petition for Equitable Garnishment as set forth previously in the text of this opinion.

(1) The payment and settlement of all claims for which coverage has been obtained by any public entity in accordance with coverages offered by the board;

(2) The payment and settlement of tort claims against any officer or employee of a participating public entity when the claim is upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the participating public entity;

(3) Attorney's fees and expenses incurred in the settlement and defense of such entities and persons for claims specified in this subsection.

Until amended in 1999, "the scope of liability coverage extended to participating entities and their officers and employees as mandated by the Act, even though that coverage differed from the memorandum of coverage issued by the MOPERM Fund." 30 DAVID D. NOCE, *Missouri Public Entity Risk Management Fund*, in MISSOURI PRACTICE SERIES, INSURANCE LAW & PRACTICE § 7:47, at 520 (2d ed. 2009) (citing *Younger v. Mo. Pub. Entity Risk Mgmt. Fund*, 957 S.W.2d 332, 336 (Mo. App. W.D. 1997).

In 1999, the General Assembly amended section 537.705.1(2):

(2) The payment and settlement of tort claims against any officer or employee of a participating public entity **for which coverage has been obtained by any public entity in accordance with coverages offered by the board** when the claim is upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the participating public entity[.]

§ 537.705.1(2), RSMo Cum. Supp. 1999 (emphasis added). The General Assembly added the highlighted language after this court's decision in *Younger*, which held that the MOPERM statute mandated that moneys in the MOPERM fund were available for the payment of tort claims regardless of whether the public entity obtained coverage. *Naucke*, 95 S.W.3d at 168. "A legislative response to a judicial pronouncement provides reliable indicia of intent and purpose of lawmaking activity." *Altom Constr. Co., LLC v. BB Syndication Servs., Inc.*, 359 S.W.3d 146, 154 (Mo. App. S.D. 2012). Following the 1999 amendment, subsection 2 "permits the policy

5

coverage to be limited either by the terms of the coverage offered by [MOPERM] or the coverage obtained by the covered entity." *Naucke*, 95 S.W.3d at 168.

Subsection (1) of section 537.705 refers to coverage of claims against the participating public entity; subsection (2) refers to coverage of claims against the participating public entity's *officers* or *employees*. Because section 537.705 neither requires nor prohibits coverage for a "*volunteer*," to determine whether the judgment against Key is covered by MOPERM, we look to the language within the Memorandum of Coverage.

Under the Memorandum of Coverage, Cole County was a "Member Agency." A "Covered Party" under the Memorandum of Coverage included "[a]ny employee or **authorized volunteer** of the Member Agency **while acting within the course and scope of their duties**."[4] (Emphasis added.) The Memorandum of Coverage defined "Authorized Volunteer" in pertinent part as "an individual who renders any service at the direction of and directly for the benefit of the Member Agency (as designated in the Declarations) without expectation of receiving a wage or salary[.]" Gilley asserts that Key was an "Authorized Volunteer" covered by MOPERM's insuring agreement and, for purposes of summary judgment, MOPERM concedes that it must agree with the assumption that Key was an "Authorized Volunteer." The issue, then, is whether Key was "acting within the course and scope of [his] duties" when he raped Gilley.

The "course and scope" language in the analogous context of employment[5] is "a test of whether the conduct of that employee was performed in furtherance of the employer's business."

---

[4] The "course and scope of duties" language tracks the allegations of Gilley's First Amended Petition and differs from Gilley's present claim that we should apply the section 537.705.1(2) "arising out of and performed in connection with official duties" language. However, section 537.705.1(2) refers to "officer or employee of a participating public entity," not an "authorized volunteer" of a participating public entity. Thus, as we have noted, since section 537.705 neither requires nor prohibits coverage for a "volunteer," we look to the insuring language of the Memorandum of Coverage—which expressly limits coverage to "volunteers" only for acts "within the course and scope of their duties."

[5] *See also* MAI 13.01 through 13.07(2) regarding definitions of "scope and course" of employment/agency. MAI (7th ed. 2012).

6

*Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. banc 2012). "Whether an act was committed within the scope and course of employment is not measured by the time or motive of the conduct, but whether it was done by virtue of the employment and in furtherance of the business or interest of the employer." *Id.* (internal quotation omitted). If the act arose "wholly from some external, independent or personal motive," then it was not done within the course and scope of employment. *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 90 (Mo. App. E.D. 2012) (internal quotation omitted). It is absurd to think that Key's rape of Gilley was undertaken in furtherance of the interests of Cole County. Clearly, the act arose from Key's personal motive. In fact, Gilley admitted in response to MOPERM's motion for summary judgment that "Key's duties as a trustee did not include having sex with other inmates, whether the inmates consented or not."

Key was not "acting within the course and scope of [his] duties" when he raped Gilley; thus, the trial court correctly concluded that Key was not covered by the MOPERM Memorandum of Coverage issued to Cole County.[6]

---

[6] Gilley's argument in her appellate briefing conflates MOPERM with the State Legal Expense Fund ("SLEF"). The General Assembly created a SLEF for the state to voluntarily assume the defense and payment of claims against state *employees* "arising out of and performed in connection with" their official duties for the state. *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 446 (Mo. App. W.D. 2007).

The MOPERM statute was designed to provide a mechanism for the defense of various local government employees who were excluded from the scope of the SLEF statute. *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 814 (Mo. App. W.D. 2011). However, in contrast to the SLEF, a public entity must pay for the right to participate in MOPERM, and such participation is optional. § 537.705.1. A public entity's participation in MOPERM has the same effect as a public entity's purchase of insurance or as a political subdivision of the state's governing body's adoption of a self-insurance plan. *Id.* "MOPERM functions like a liability insurance carrier and issues to each insured a 'memorandum of coverage.'" *Am. Cas. Co. of Reading*, 399 S.W.3d at 71. Prior to 1999, the MOPERM statute contained language substantially similar to the scope of liability coverage language in the SLEF statute. But the 1999 amendment to section 537.705.1(2) restricted a participating public entity's scope of liability to that "for which coverage has been obtained by any public entity in accordance with coverages offered by the [MOPERM] board." Thus, the cases interpreting the extent of coverage under the SLEF statute are inapposite to a determination of coverage under a memorandum of coverage issued by MOPERM. That said, Gilley's reliance upon *Cravens* is inapposite for yet another reason: the underlying tortfeasor in *Cravens* was an *employee*, not a volunteer, which raises different issues than those of the facts presented in the present case. In that regard, it is noteworthy that the SLEF contains neither a requirement that the employee be acting "in good faith," nor a criminal conduct exception, and therefore a § 1983 claim for denial of constitutional rights under color of state law is covered by the SLEF.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Judge

Thomas H. Newton, Presiding Judge,
and Cynthia L. Martin, Judge, concur.

---

*Cravens*, 234 S.W.3d at 447-48. Indeed, in *Cravens*, the court found that the employee "was charged . . . with the care and custody of Cravens and that he had used the authority . . . to perpetrate the sexual assaults on Cravens," and further that the employee's "acts were done, in part, as an official form of punishment for Cravens's violation of prison rules," all of which the federal district court had found to be a violation of "Cravens's constitutional rights under color of law." *Id.* at 448.